OFFICE COPY

Jonathan J. Lerner
Maura Barry Grinalds
Timothy G. Nelson
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

**08 CIV 3721**

Attorneys for Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PROSPECT CAPITAL CORPORATION,
PROSPECT CAPITAL MANAGEMENT LLC,
JOHN F. BARRY, M. GRIER ELIASEK,
WALTER PARKER and BART DE BIE,

               Petitioners,

    - against -

MICHAEL ENMON,

               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



## PETITION TO CONFIRM AN ARBITRATION AWARD

Pursuant to 9 U.S.C. §§ 6 and 9, Petitioners Prospect Capital Corporation, Prospect Capital Management LLC, John F. Barry, M. Grier Eliasek, Walter Parker and Bart De Bie, by and through their undersigned counsel, as and for their petition against Respondent Michael Enmon ("Enmon"), respectfully submit this Petition to Confirm an Arbitration Award.

### I.
### OVERVIEW

1.    This is an action commenced pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and N.Y. C.P.L.R. § 7510 for an order and judgment confirming a Partial,

Final Arbitration Award dated April 14, 2008 (the "Award," Ex. A)[1] made by the American Arbitration Association (the "AAA") by a single arbitrator, John H. Wilkinson, Esq. (hereinafter the "Arbitrator"). The 34-page, fully-reasoned Award has definitively addressed, and dismissed, all of Enmon's claims, which arose out of Enmon's inability to obtain financing from Petitioners in early 2006 to acquire Caprock Pipe & Supply L.P. ("Caprock LP"), a New Mexico energy services company. Petitioners now seek confirmation of the Award.

## II.
## THE PARTIES

2. Petitioner Prospect Capital Corporation ("Prospect"), formerly known as Prospect Energy Corporation, is a Maryland corporation with its principal place of business in New York, New York. Prospect provides financing to companies, often in energy related businesses, and often in the form of "mezzanine" or subrogated loans.

3. Petitioner Prospect Capital Management LLC ("PCM") is a limited liability company incorporated under the laws of Delaware, with its principal place of business in New York. Prospect Capital Management is the investment advisor to Prospect.

4. Petitioner John F. Barry, III is the Chief Executive Officer of Prospect and PCM, a resident of Greenwich, Connecticut and a citizen of Connecticut.

5. Petitioner Grier Eliasek is the president of Prospect and an employee of PCM, a resident of Greenwich, Connecticut and a citizen of New York.

---

[1] References herein to exhibits are to the Declaration of Timothy Graham Nelson dated April 18, 2008.

6.    Petitioner Walter Parker is a member of the Board of Directors of Prospect, a resident of Greenwich, Connecticut and a citizen of Connecticut.

7.    Petitioner Bart de Bie is an employee and Principal of PCM, a resident of Greenwich, Connecticut and a citizen of New York.

8.    Respondent Michael Enmon ("Enmon") is a resident of Jefferson County, Texas and a citizen of the State of Texas or alternatively of New Mexico.

## III.
## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 because of complete diversity of citizenship between the parties and because the amount in controversy exceeds the value of $75,000 exclusive of interest. This Court has personal jurisdiction over the Respondent because Respondent has expressly and irrevocably consented to this Court's jurisdiction over him pursuant to a letter agreement dated April 11, 2006 between Enmon and Prospect (the "Letter Agreement"). (*See* Ex. B at 3 § 10.) Moreover, the parties have entered into a valid and binding agreement to submit to arbitration pursuant to the AAA Rules (Ex. C), and are thus "deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." (*Id.* Rule R-48.)

10.    Venue is proper in this District by virtue of 9 U.S.C. § 9, by virtue of the foregoing provisions of the Letter Agreement and/or by virtue of the fact that the Award was rendered in New York, New York.

## IV.
## RELATED PROCEEDINGS

11. Respondent's long-standing determination to avoid arbitration and to litigate his claims in Court has unfortunately led to a proliferation of legal actions in various courts. Set forth below are the related legal actions to which reference is made in this Petition:

(a) **Enmon's Texas Action**: In December 2006, in direct violation of the unequivocal terms of the Letter Agreement mandating that any dispute between the parties be heard exclusively in New York, Enmon purported to commence a third-party claim against Petitioners in the District Court of Texas, Jefferson County in December 2006, captioned *Robert Fiser Attorney at Law P.C. v. Michael Enmon*, Cause No. B-0177745 (hereinafter the "Texas Action"). The main claim in that action was commenced by Enmon's attorney, Robert Fiser, in an apparent collusive attempt to lay venue in a Texas state court. In the Texas Action, Enmon sought to assert against Petitioners a series of claims that were ultimately also asserted and fully heard in the Arbitration — and dismissed in their entirety by the Award.

(b) **The Petition to Compel Arbitration**: In January 2007, Petitioners brought a prior proceeding in this court against Enmon, captioned *Prospect Energy Corp. et al. v. Enmon*, No. 07 Civ. 117 (RLC) (the "Petition to Compel Arbitration"). In the Petition to Compel, Petitioners sought: (1) an order compelling arbitration of all claims brought by Enmon in the Texas Action; and (2) an order restraining Enmon and his privies from prosecuting litigation concerning that controversy, including the Texas Action. By order dated February 13, 2007 (the "2/13/07 Order"), the Honorable Leonard B. Sand granted such relief.

(c) **Enmon's Last-Minute Rule 60(b) Application to Avoid Arbitration**: On the eve of the arbitration hearings, Enmon and "Intervenor" "Caprock Pipe and Supply Inc." (whose name, in fact, is Enmon Capital, Inc.) moved this Court for relief under Fed. R. Civ. P. 60(b) from the 2/13/07 Order so that "Caprock Pipe and Supply Inc." could initiate a new action arising out of the identical transactions and proposed financing in New York State court. By order dated July 24, 2007 ("7/24/07 Order"), the Honorable Leonard B. Sand denied a motion under Fed. R. Civ. P 60(b) for relief from the 2/13/07 Order.

(d) **Enmon's Appeal from this Court's Order Compelling Arbitration**. In March 2007, Enmon appealed the 2/13/07 Order compelling arbitration to the United States Court of Appeals for the Second Circuit (No. 07-1047-CV). That appeal is full-briefed and now awaits oral argument before the Second Circuit.

(e) **Enmon's Appeal from the Denial of Rule 60(b) Relief**. In August 2007, Enmon appealed the 7/24/07 Order denying Rule 60(b) relief to the United States Court

4

of Appeals for the Second Circuit (No. 07-3632-CV). In October 2007, Enmon withdrew that appeal.

## V.
## FACTUAL BACKGROUND

**A.    The April 2006 Letter Agreement Between Enmon and Prospect**

12.    The Award resolves a dispute that arose in the wake of Enmon's unsuccessful attempt, in mid-2006, to obtain financing from Prospect to complete the acquisition of Caprock Pipe & Supply, Inc. ("Caprock LP"), a New Mexico company engaged in the purchase and sale of refurbished pipe. As both this Court and the Arbitrator correctly held, the terms upon which Enmon's loan application would be considered by Prospect were governed by a Letter Agreement dated April 11, 2006, between Prospect and Enmon (the "Letter Agreement").

13.    Paragraph 10 of the Letter Agreement contained a binding arbitration provision providing for arbitration in New York, which stated, in salient part:

> This letter shall be governed by and construed in accordance with the internal laws of the State of New York for contracts made and to be enforced therein, without regard to principles of conflicts of laws. Unless Prospect in its sole discretion waives the requirement to arbitrate, *the parties agree to submit any dispute to binding arbitration in New York City according to the rules of the American Arbitration Association* with the losing party paying the legal and related fees and expenses of the prevailing party.

(Ex. B at 3 § 10 (emphasis added).)

14.    The Letter Agreement was also accompanied by a non-binding "Term Sheet" that set forth possible funding terms. The Letter Agreement, however, provided that consummation of the proposed financing was subject to several separate and independent conditions. Among these were: (1) satisfactory completion of due diligence; (2) approval of Enmon's loan application by Prospect's Investment Committee (*see* Ex. B at 1 § 2); and (3) a requirement that

5

definitive final loan documentation, in a form satisfactory to Prospect, be negotiated, executed and delivered. (*Id.*) The Letter Agreement further provided that the ultimate decision whether or not to extend financing on the terms proposed in the Term Sheet, or to offer alternative loan terms, was a matter for Prospect's sole discretion. (*Id.*) The Letter Agreement expressly barred Enmon from contesting in any forum Prospect's decision to offer different terms or to decline to close any transaction on the same, different, or any terms, for any or no reason. (Ex. B at 1-2 § 3.)

**B.     May 2006: Enmon's Failed Attempts to Gain Financing
         from Prospect to Purchase Caprock Pipe & Supply LP**

15.     In the week of May 8, 2006, Enmon requested that Prospect extend financing on certain terms, including that such financing be extended on May 12, 2006 (three days earlier than that stated in the Letter Agreement). At that time, Prospect had not completed due diligence or finalized any loan documentation – and its Investment Committee had not approved Enmon's loan proposal – all of which were explicit prerequisites under the Letter Agreement to the extension of any financing by Prospect. After a series of additional negative developments and negative information came to light during the final week, Prospect declined to extend financing on the terms requested by Enmon and no financing agreement was consummated or executed. The Arbitrator subsequently held that Prospect's actions conformed with, and were permitted by, the Letter Agreement. (*See* Ex. A at 28.)

16.     During their final week of abortive negotiations, Prospect and Enmon exchanged drafts of a possible Credit Agreement between the proposed borrower, Enmon's shell company, Enmon Capital, Inc. (known in 2006 as Caprock Pipe & Supply, Inc.) ("Enmon Capital") and Prospect. As the Arbitrator correctly ruled, no executed final version of the Draft Credit

6

Agreement was ever delivered by Prospect to Enmon. (*See* Ex. A at 23-25.) Accordingly, the Draft Credit Agreement never became effective and no rights arose thereunder. (*Id.* at 25.)

17. In the week of May 15, 2006, Enmon's plans to acquire Caprock LP apparently collapsed. After that time, Prospect heard nothing from Enmon until December 2006, when Enmon asserted claims against it in the Texas Action.

C. **December 2006: Enmon Improperly Claims against Petitioners in the Texas Action**

18. On or about September 21, 2006, Enmon was sued by his own attorney, Robert Fiser ("Fiser"), in the District Court of Texas, Jefferson County, for Enmon's alleged failure to pay for Fiser's bills for legal services in the amount of $41,705.11. (*See* Ex. D.)

19. On or about December 4, 2006, in direct violation of both the Arbitration Agreement and the exclusive forum selection clause in the Letter Agreement, Enmon instituted against Prospect Capital a cross-action in the District Court of Texas, Jefferson County, Beaumont, Texas (the "Texas Action"), alleging common law fraud, statutory fraud under Tex. Bus. & Com. Code § 27.01, and tortious interference with Enmon's purported contract with Caprock LP, based entirely on Prospect Capital's decision not to consummate the financing proposed for consideration in the Letter Agreement. (*See* Ex. E at 4-9 ¶¶ 20-46.) Enmon also named as defendants Prospect Capital's investment advisor, PCM, and each of the individual Petitioners, all of whom were sued solely based on actions taken in their capacity as directors, officers, representatives, employees or agents of Prospect Capital in connection with the Letter Agreement and proposed Caprock LP financing, and not based on any actions, claims or relationship independent of those matters.

20. The selection of state court in Beaumont – and the apparently collusive actions of Enmon and Fiser in engineering a litigation posture that made it difficult for Petitioners to

7

remove the Texas action – was an obvious forum-shopping ploy to thwart the arbitration clause by laying venue in a forum he believed to be advantageous.

21.     In his claims in the Texas action, Enmon requested damages "in excess of $50 million" plus interest, attorneys' fees, costs and exemplary damages (Ex. E at § VIII) – despite the express terms of the Caprock Agreement precluding any liability, or any claim for damages, whether consequential or otherwise, in the event Prospect Energy declined to proceed with the proposed financing. (Ex. B at 2-3 § 9.)

D.    **In Accordance with the Letter Agreement, Petitioners Properly Instituted Arbitration Proceedings before the AAA in New York**

22.     Because Enmon's claims against Petitioners were subject to the binding arbitration provisions of the Letter Agreement, on December 21, 2006, Petitioners commenced the Arbitration under the auspices of the AAA in New York, New York, seeking a declaration that Petitioners bore no liability to Enmon, an award of damages for the attorneys' fees incurred as a result of Enmon's violation of the agreement to arbitrate, and an award of attorney's fees and all AAA administrative fees and costs in the Arbitration.

E.    **Petitioners Seek and Obtain an Order from this Court Compelling Arbitration and Restraining the Texas Action**

23.     On January 5, 2007, Petitioners filed a Petition to Compel Arbitration and for Injunctive Relief in this Court, seeking to compel arbitration of all claims in the Texas Action and to enjoin Enmon and his privies from further prosecuting the Texas Action.

24.     On January 9, 2007, Enmon filed with the AAA an application for a stay of the Arbitration. In that application, Enmon asserted that the determination of the existence and scope of the arbitration agreement should be decided under the law of Texas or New Mexico by

8

the Texas state court (*see* Ex. F at 1-3), despite section 10's explicit New York choice of law and New York choice of forum provision. (*See* Ex. B at 3 § 10.) Enmon stated:

> Michael Enmon hereby objects to the jurisdiction of the arbitrator and to the arbitrability of his claims against [Petitioners]. Enmon requests that the Arbitration Panel stay this proceeding until the Texas Court determines whether the arbitration provision is binding.

(Ex. F at 1.)

25. On January 10, 2007, the AAA held an initial administrative conference call in the Arbitration. During that call, Enmon's counsel requested that the AAA administrator stay the Arbitration pending a judicial determination of whether the dispute was arbitrable. That request was denied. Enmon's counsel then declared -- despite the pendency of Prospect's petition in the district court to enforce the parties' arbitration agreement -- that he intended to seek a stay of the Arbitration from the state court in Texas.

26. On January 11, 2007, to preserve the Arbitration and stave off a preemptive adjudication by the Texas state court on the enforceability of the Arbitration Agreement, Prospect sought a temporary restraining order before Judge Robert Patterson, sitting in Part I. Prospect's application was made on notice to Enmon's counsel, in conformity with Rule 65(b) of the Federal Rules of Civil Procedure. Judge Patterson granted a TRO restraining the Texas Action pending the disposition of Prospect's Petition to Compel Arbitration. (Ex. G.)

27. Rather than avail himself of his right to be heard, Enmon used the period between receiving that notice and the hearing on Prospect's application to obtain an *ex parte* order from the judge in the Texas Action which purported to bar Prospect from seeking relief in federal court. (Ex. H.) It appears that Enmon did not inform the Texas state court that the Petition to Compel Arbitration was proceeding in federal court -- as it would be inconceivable that a Texas

court would knowingly issue an order seeking to enjoin a federal proceeding which would be void *ab initio* and in direct violation of the Supremacy Clause, U.S. Const. art. VI, cl. 2. In any event, once the Texas court was made aware of the fact that the Petition to Compel was pending in federal court, thus implicating the Supremacy Clause, *see General Atomic Co. v. Felter*, 434 U.S. 12, 18-19 (1977) (under the Supremacy Clause, state court lacked the power to bar a litigant from filing and prosecuting an action in federal court, including federal actions to enforce arbitration proceedings: "[t]he right to pursue federal remedies and take advantage of federal procedures and defenses in federal actions" may not be restrained by a state court), Enmon soon abandoned any attempt to enforce the Texas state court's void *ex parte* injunction.

28. The Petition to Compel Arbitration was heard before the Honorable Leonard B. Sand on January 26, 2007 (Ex. I) and February 13, 2007 (Ex. J). In the meantime, based on the parties' ranking of candidates on a list provided by the AAA, the AAA appointed John H. Wilkinson, Esq. as the Arbitrator in the Arbitration.

29. At the conclusion of the February 13, 2007 hearing, Judge Sand determined that the "arbitration agreement [was] valid and enforceable, and direct[ed] that [the Arbitration] go forward as scheduled." (Ex. J at 43:14-16.) The court further issued an injunction "[i]n preservation of that order," enjoining Enmon and all parties acting in concert with him from further prosecuting the Texas Action or any other proceedings in violation of the arbitration agreement. (Ex. J at 43:17-44:3.)

F. **Enmon Asserts Arbitral Counterclaims**

30. On February 19, 2007, Enmon filed a Counterclaim in the Arbitration in which he (1) challenged the jurisdiction of the Arbitrator (Ex. K at 4); (2) repeated the factual allegations

he had previously made in the Texas Action (*Id.* at 1-4); and (3) affirmatively sought relief based on those factual allegations, including damages. In his Prayer for Relief, Enmon stated:

> ENMON prays that this Honorable Tribunal award him a declaration that allows the Texas case to proceed. In the alternative, Enmon prays that this Honorable Tribunal award him actual damages, consequential damages, pre-judgment and post-judgment interests, reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, costs of court, exemplary damages, and all such other and further relief, to which Enmon may show himself entitled.

(*Id.* at 4).

### G.   Discovery Takes Place in the Arbitration

31.   By Procedural Order dated February 20, 2007, the Arbitrator directed that the parties engage in documentary discovery and exchange expert reports prior to the arbitration hearings, scheduled to commence on July 23, 2007.

32.   The parties subsequently exchanged document requests, produced documents and exchanged privilege logs, as ordered by the Arbitrator. The parties also exchanged reports of their respective experts.

### H.   On the Eve of the Arbitration Hearing, Enmon and His Shell Company Enmon Capital Inc., Try and Fail to Abort the Arbitration by Filing Another Motion in this Court

33.   On July 12, 2007, only eleven days prior to the commencement of the arbitral hearings, Enmon made a new bid to frustrate the Arbitration and to re-launch his claims in litigation. By a motion filed on July 12, 2007 in his own name and purportedly also on behalf of his New Mexico-incorporated company, which he falsely labeled "Caprock Pipe & Supply, Inc." and tried to present as a bona fide intervenor – without disclosing that this entity's name had been changed to *Enmon Capital, Inc.* some months earlier – Enmon applied, pursuant to Fed. R. Civ. P. 60(b), for an order modifying the 2/13/07 Order to permit Enmon Capital, Inc. ("Enmon

11

Capital") to pursue litigation in the courts of New York against Prospect for alleged breach of the draft Credit Agreement. (*See* Ex. L.)

34.     As supposed justification for his last-ditch motion, Enmon falsely claimed that he only "recently uncovered" that Prospect had signed provisional signature pages of the draft Credit Agreement, which were never delivered to Enmon (or his counsel) and were accompanied by explicit instructions by Prospect stating "DO NOT SEND OUT UNTIL YOU TALK TO ME. For [Prospect's counsel] only." (*See* Ex. A at 24.) Based on the mere existence of these provisional signature pages, Enmon manufactured an entirely new (and patently frivolous) case theory, namely that the mere execution by Prospect of these undelivered, provisional signature pages, divorced from any agreement, led to the creation of a fully-binding Credit Agreement between Enmon Capital and Prospect, superseding and nullifying the Letter Agreement – and thus nullifying any arbitration proceedings conducted thereunder. The truth, however, is that Enmon had long known that these signature pages existed – indeed, he had already alleged as much in virtually every filing, across four different fora, and in the Arbitration itself.

35.     Then, on July 17, 2007, in direct contradiction to his representation to the Arbitrator that this emergency motion would not interfere with the arbitration set to commence just days later, on July 23, 2007, Enmon's counsel requested that this Court grant an expedited hearing to stay the Arbitration. After that request was denied, Enmon's counsel persisted in seeking reconsideration from this Court during the hearing itself.

36.     On July 23, 2007, the Arbitration hearings duly commenced pursuant to the Procedural Order. Those hearings continued throughout that week, but were adjourned briefly on July 24, 2007, in order for the parties to participate in a conference call with this Court, during which this Court reconsidered Enmon's Rule 60(b) motion. After hearing from both

parties, the Court indicated that it was not prepared to grant the Rule 60(b) relief requested by Enmon. (Exs. M, N.)[2] In the course of doing so, this Court categorically rejected Enmon's legal argument that a credit agreement was consummated based no Prospect's signing of provisional signature pages which were never released or delivered, an argument that the Court characterized as representing a "radical variation of the law of contracts." (Ex. N at 17:20.)

37.     Based on settled legal principles, and in a 34-page, fully-reasoned Award, the Arbitrator fully concurred with this Court's conclusion and rejected Enmon's claims, including his new claim that a credit agreement arose from the undelivered provisional signature pages. (Ex. A at 23-25.) Moreover, in light of Enmon's threats during the Arbitration to seek to relitigate his claims in further proceedings through his shell company, "Caprock Pipe & Supply Inc." (a/k/a Enmon Capital, Inc.), in his Award, based on the "considerable evidence" submitted in the Arbitration, the Arbitrator specifically held that Enmon and Defendant were *alter egos*:

> Caprock Pipe & Supply, Inc.
>
> In April 2006, Mr. Enmon created a New Mexico Company called Caprock Pipe & Supply, Inc., later named Enmon Capital Inc. ("Caprock Inc."). Caprock Inc. was a single purpose entity which was formed solely as the vehicle for purchasing Caprock L.P. and for borrowing funds in connection therewith. Mr. Enmon has at all times controlled Caprock L.P. and has at all times treated it as his own entity. Based on considerable evidence at the hearing, it is clear that Caprock Inc. is the alter ego of Mr. Enmon and is in privity with him.

(Ex. A at 3-4.) This finding conclusively establishes that the Award precludes any attempts by Enmon to relitigate any issues in the arbitration through his *alter ego* Enmon Capital.

I.      **The Completion of the Arbitration and the Rendering of the Award**

38.     There were 10 full days of hearings before the Arbitrator held during June 23-27, 2007, September 14-16, 2007 and November 14-15, 2007, during which both sides called and

---

[2] Enmon subsequently appealed the 7/24/07 Order, but withdrew that appeal in October 2007.

examined numerous witnesses, numerous documents were entered into evidence and both parties had a full and fair opportunity to be heard. The Arbitrator then received extensive post-hearing memoranda (totaling over 217 pages) from both parties.

39. On April 14, 2008, the Arbitrator rendered the Award in which he determined:

(a) The Arbitrator has jurisdiction to hear and determine all disputes brought by Enmon. (*See* Ex. A at 16.)

(b) The Letter Agreement, including the arbitration agreement contained therein, is valid and binding in all respects. (*See* Ex. A at 18, 25.)

(c) Petitioners' actions in declining to extend financing to Enmon were permitted by the terms of the Letter Agreement. (*See* Ex. A at 28.)

(d) Enmon failed to prove any wrongful conduct by Petitioners, thus warranting dismissal of all of Enmon's claims of fraud, breach of fiduciary duty and tortious interference. (*See* Ex. A at 29.)

(e) The draft Credit Agreement, as circulated between Prospect and Enmon prior to and during May 12, 2006, was never consummated. (*See* Ex. A at 25.)

(f) In pursuing litigation in the Texas Action and in otherwise violating his obligation to arbitrate disputes and his covenant not to sue Prospect, Enmon violated the Letter Agreement and is therefore liable to pay damages in an amount to be quantified. (*See* Ex. A at 33.)

(g) Enmon is liable to pay all of Petitioners' attorney's fees incurred in the course of the Arbitration, in an amount to be quantified. (*See* Ex. A at 34.)

(h) Enmon controls Enmon Capital to such an extent that Enmon and Enmon Capital, Inc are alter egos. (*See* Ex. A at 3-4, 23-25.)

J. **Confirmation of the Award is Appropriate**

40. The Award satisfies all of the requirements for confirmation pursuant to Section 9 of the FAA and/or N.Y. C.P.L.R. § 7510.

## VI.
## RELIEF REQUESTED

41. In light of the foregoing, Petitioners seek:

(a) an order of this Court pursuant to 9 U.S.C. § 9, or alternatively N.Y. C.P.L.R. § 7510 confirming the Award and entering judgment thereon; and

(b) any other relief that this Court deems necessary and proper in the interests of justice.

Date: April 18, 2008
New York, New York

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP

*/s/ Jonathan J. Lerner*
Jonathan J. Lerner
Jonathan.Lerner@skadden.com
Maura Barry Grinalds
MauraBarry.Grinalds@skadden.com
Timothy G. Nelson
Timothy.G.Nelson@skadden.com
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for Petitioners