UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PROSPECT CAPITAL CORPORATION,　　　：
PROSPECT CAPITAL MANAGEMENT LLC,　：
JOHN F. BARRY, M. GRIER ELIASEK,　　：
WALTER PARKER and BART DE BIE,　　　：
　　　　　　　　　　　　　　　　　　　：　　08 CV 03721
　　　　　　　　Petitioners,　　　　　：
　　　　　　　　　　　　　　　　　　　：　　(ECF CASE)
　　　　- against -　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　：
MICHAEL ENMON,　　　　　　　　　　：
　　　　　　　　Respondent.　　　　　：
　　　　　　　　　　　　　　　　　　　：

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL DECLARATION OF TIMOTHY GRAHAM NELSON IN FURTHER SUPPORT OF PETITION

I, TIMOTHY G. NELSON, hereby declare under penalty of perjury:

1.　　I am a member of the Bar of this State and the firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel for Petitioners Prospect Capital Corporation, Prospect Capital Management LLC, John F. Barry, M. Grier Eliasek, Walter Parker and Bart De Bie.

2.　　In connection with the Petition, I attach true copies of the following documents:

| Ex.: | Date: | Document: |
|------|-------|-----------|
| 1 | June 7, 2007 | Certificate of Amendment of Enmon Capital, Inc. (previously Caprock Pipe & Supply, Inc.) and accompanying May 25, 2007 Articles of Amendment. |
| 2 | Jan. 11, 2007 | Email to Enmon's counsel from Petitioners' counsel transmitted two hours prior to Petitioners' TRO application. |

| 3 | July 21, 2007 | Email from John Wilkinson, Esq. (the "Arbitrator") to the parties. |
| 4 | July 19, 2007 | E-mail from Enmon's counsel to Arbitrator and Petitioners' counsel. |
| 5 | June 22, 2007 | Appellee's Brief to the United States Court of Appeals for the Second Circuit in *Prospect Energy Corp. et al. v. Enmon*, No. 07-1047-CV. |
| 6 | May 23, 2007 | Enmon's Opposed Motion for a Continuance in the Arbitration. |
| 7 | May 24, 2007 | Letter (and accompanying exhibit) from Petitioners' counsel to Arbitrator, c.c. Enmon's counsel. |
| 8 | July 19, 2007 | Letter (and accompanying exhibits) from Petitioners' counsel to Arbitrator, c.c. Enmon's counsel. |
| 9 | Aug. 15, 2007 | E-mail from AAA to parties giving notice of September hearings. |
| 10 | Oct. 8, 2007 | E-mail from Enmon's counsel to Arbitrator and Petitioners' counsel. |
| 11 | Feb. 20, 2007 | Letter from AAA to parties enclosing Arbitrator's Scheduling Order of February 15, 2007 conference (mis-dated July 15, 2007). |
| 12 | June 21, 2007 | Letter from Enmon's counsel to Arbitrator, c.c. Petitioners' counsel. |
| 13 | June 23, 2007 | Email from Petitioners' counsel to Enmon's counsel. |
| 14 | June 26, 2007 | Email from Arbitrator to parties. |
| 15 | June 23, 2007 | Letter from Petitioners' counsel to Arbitrator, c.c. Enmon's counsel. |

Dated: New York, New York
        May 22, 2008

TIMOTHY G. NELSON

2

EXHIBIT 1



# OFFICE OF THE
# PUBLIC REGULATION COMMISSION

CERTIFICATE OF AMENDMENT

OF

ENMON CAPITAL, INC.

3331287

    The Public Regulation Commission certifies that duplicate originals of the Articles of Amendment attached hereto, duly signed and verified pursuant to the provisions of the
BUSINESS CORPORATION ACT
(53-11-1 to 53-18-12 NMSA 1978)
have been received by it and are found to conform to law.

    Accordingly, by virtue of the authority vested in it by law, the Public Regulation Commission issues this Certificate of Amendment and attaches hereto a duplicate original of the Articles of Amendment.

Dated: JUNE 7, 2007

In testimony whereof, the Public Regulation of the State of New Mexico has caused this certificate to be signed by its Chairman and the seal of said Commission to affixed at the City of Santa Fe.

_____
Chairman

_____
Bureau Chief

3 3 3 1 2 8 7

**SUBMIT ORIGINAL AND A COPY**
**TYPE OR PRINT LEGIBLY**

FILED IN OFFICE OF
NM PUBLIC REG. COMM.

JUN ~ 7 2007

CORPORATION BUREAU

Profit Corporation
**ARTICLES OF AMENDMENT**
**TO THE ARTICLES OF INCORPORATION**
**TO CHANGE NAME OF CORPORATION**

Pursuant to the provisions of the New Mexico Business Corporation Act, the undersigned corporation adopts the following Articles of Amendment for the purpose of amending its Articles of Incorporation to change its corporate name:

**ARTICLE ONE**: The name of the corporation is (include NMPRC#):  Caprock Pipe & Supply, Inc, NMPRC 2716587.

**ARTICLE TWO**: The following articles are amended as set forth here:

Article One:  The name of the corporation is hereby changed to Enmon Capital, Inc.

**ARTICLE THREE: No shares have been issued,** and the amendment was adopted by a resolution of the board of directors. The **date** the amendment was adopted was April 19, 2007.

**ARTICLE FOUR** These Articles of Amendment are to be effective upon filing with the commission.

Dated: _5/25/07_          Caprock Pipe & Supply, Inc.

By _____
Michael Enmon, President

**Form DPR-AM**
(revised 7/03)

RECEIVED
JUN 7 2007
NM PUBLIC REG.
CORPORATION BUREAU

RECEIVED
MAY 3 1 2007
NM PUBLIC REG. COMM.
CORPORATION BUREAU

D:\DOCUME~1\x2100JJ\LOCALS~1\Temp\14\XPGrpWise\Articles of Amendment.doc

# EXHIBIT 2

## Sussner, Daniel M (NYC)

| | |
|---|---|
| **From:** | MGRINALD |
| **Sent:** | Thursday, January 11, 2007 12:02 PM |
| **To:** | 'jitkin@arnolditkin.com' |
| **Cc:** | Lerner, Jonathan J (NYC); Schwartz, Charles W (HOU); Nelson, Timothy G. (NYC) |
| **Subject:** | Prospect Energy Application for Temporary and Preliminary Injunctive Relief in the SDNY |
| **Attachments:** | Order to Show Cause.pdf; Memo of Law.pdf; Declaration of Maura B Grinalds.pdf; Grinalds Decl Ex 1 (Petition).pdf; Grinalds Decl Ex 2 (Barry Aff).pdf; Exhibit A to Barry Aff.pdf; Exhibit B to Barry Aff.pdf; Exhibit C to Barry Aff.pdf; Exhibit D to Barry Aff.pdf; Exhibit E to Barry Aff.pdf; Exhibit F to Barry Aff.pdf; Exhibit G to Barry Aff.pdf; Grinalds Decl Ex 3 (Letter to AAA).pdf; ecf_guidelines_faq.pdf; ECFinstructfiling3.pdf; MHD Rulespdf.pdf; procedures_ecf.pdf; RLC Rules.pdf |

Jason:

As per my voicemail to you this morning, in light of your representation yesterday that you intend to seek from the Texas state court a stay of the New York AAA Arbitration, which will irreparably harm the Petitioners and alter the status quo before the United State District Court  to is able to adjudicate Petitioners' Petition to Compel and for Injunctive Relief, we will ask the District Court for a temporary restraining order and other preliminary injunctive relief preventing any such action to proceed.  In this connection, we intend to be at the Clerk's office cashier window (room 120) at 2:00 p.m. today (New York time) and to proceed to Judge Carter's chambers.

Please advise us whether you intend to send your local counsel to meet us there or if you would like us to patch you in by phone.  Please reply immediately.

Attached are our TRO papers, and additional information on court rules and procedures.

You may reach me at 212-735-7808.

Maura

EXHIBIT 3

## Auer, Allison (NYC)

**From:**    Grinalds, Maura Barry
**Sent:**    Saturday, July 21, 2007 9:50 AM
**To:**    Farrell, Beverly; Friedman, Elliot; Meyers, A.J.
**Subject:**  FW: Prospect Energy Corp. v. Enmon

---

**From:** John Wilkinson [mailto:johnhwilkinson@msn.com]
**Sent:** Saturday, July 21, 2007 9:47 AM
**To:** Nelson, Timothy G.
**Cc:** Grinalds, Maura Barry; Lerner, Jonathan; Jason Itkin; Caj Boatright
**Subject:** Re: Prospect Energy Corp. v. Enmon

Dear Parties:

It is not at all unusual in arbitration to take witnesses out of order in order to accommodate busy and conflicting schedules. It is just another means of maximizing the efficiency of the process. It is only to be done, however, when truly necessary and when it will not be overly disruptive of an orderly process.

I would ask Mr. Itkin to pare down his "out of order" witnesses and to have very good reason why it is really necessary to take such witnesses out of order. The contemplated length of the testimony of the "out of order" witnesses is also a factor to be considered. When witnesses are taken out of order, cross examination will be permitted on the issue of whether it was really necessary take them out of order. Finally, one way or the other, I am going to want to hear the testimony of everyone who has something relevant to say.

We will have to discuss this first thing Monday morning. Regards.

John Wilkinson

----- Original Message -----
**From:** Nelson, Timothy G.
**To:** John Wilkinson
**Cc:** Grinalds, Maura Barry ; Lerner, Jonathan ; Jason Itkin ; Caj Boatright
**Sent:** Thursday, July 19, 2007 9:44 PM
**Subject:** RE: Prospect Energy Corp. v. Enmon

Dear Mr. Wilkinson,

We respect your busy schedule and would not want to impose on your work tomorrow. However, could we trouble you for clarification on one important threshold point -- namely, a direction that Claimants' case shall proceed first (as in the ordinary course) and that Respondent's case shall proceed thereafter? Normally this would go without saying, but we have reason to believe that Mr. Itkin has been telling his witnesses that they would be testifying on Monday, thus creating some confusion on this issue. At present, Claimants' witnesses, who are busy senior executives, expect to be testifying on Monday. If there is to be any variation from the normal order of case presentation, we would need to inform those witnesses as soon as possible. Again, we apologize for the intrusion.

Sincerely

Timothy G. Nelson

---

**From:** John Wilkinson [mailto:johnhwilkinson@msn.com]
**Sent:** Thursday, July 19, 2007 7:50 PM
**To:** Jason Itkin; Caj Boatright; Nelson, Timothy G.
**Cc:** Grinalds, Maura Barry; Lerner, Jonathan
**Subject:** Re: Prospect Energy Corp. v. Enmon

I'm off to an out of town mediation which starts early and ends late tomorrow. We will take this up at the commencement of the hearing on Mon. Regards.

John Wilkinson

----- Original Message -----
**From:** Nelson, Timothy G.
**To:** johnhwilkinson@msn.com ; Jason Itkin ; Caj Boatright
**Cc:** Grinalds, Maura Barry ; Lerner, Jonathan
**Sent:** Thursday, July 19, 2007 6:28 PM
**Subject:** Prospect Energy Corp. v. Enmon

Dear Mr. Wilkinson,

Attached is a PDF copy of a letter from Ms. Grinalds, also delivered by fax today.

Sincerely

Timothy G. Nelson
Counsel
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York NY 10036
USA
Direct line (212) 735-2193
Direct fax (917) 777-2193
Email:  tinelson@skadden.com
www.skadden.com

--------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, u

****************************************************
This e-mail and any attachments thereto, is intended only for use by the address

Further information about the firm, a list of the Partners and their professiona
****************************************************
================================================================================

EXHIBIT 4

**Angelica, Christopher**

| | |
|---|---|
| **From:** | Nelson, Timothy G. |
| **Sent:** | Thursday, July 19, 2007 11:09 PM |
| **To:** | Kurt Rieke; 'John Barry'; Grier Eliasek; 'Bart deBie' |
| **Cc:** | Grinalds, Maura Barry; Friedman, Elliot; Farrell, Beverly |
| **Subject:** | FW: Prospect Energy Corp. v. Enmon |

FYI (part 2).

---

**From:** Jason Itkin [mailto:jitkin@arnolditkin.com]
**Sent:** Thursday, July 19, 2007 10:29 PM
**To:** Nelson, Timothy G.; John Wilkinson
**Cc:** Grinalds, Maura Barry; Lerner, Jonathan; Caj Boatright; Claudia Martinez
**Subject:** RE: Prospect Energy Corp. v. Enmon

Dear Mr. Wilkinson-

It appears that this dispute has once again devolved into a lengthy letter writing campaign. I would like to clear up a few of the wild accusations that have once again popped up.

1.    <u>Coordination of Pre-Trial Issues</u>

Nobody from Claimant's office has tried to communicate with my office about coordinating witnesses or exhibits until this evening. The only communications that we have received about trial coordination were with regard to the use of technology and a court reporter at the proceeding. Our technology person and Prospect's were able to reach an agreement on how to proceed.

2.    <u>Witnesses</u>

The idea that the witnesses Enmon intends to call are "surprise" witnesses is without merit. As discussed last week, these witnesses are the folks who were involved in the transaction. They are the non-party witnesses to this dispute. Their names are all over the documents that will be used as exhibits next week.

It is not Enmon who is trying to create chaos here, but Prospect. Claimants

know that the fact witnesses will provide damaging testimony. Instead of confronting that testimony (and the true facts here), they hope to avoid the truth through procedural machinations.

The reason that Prospect knows when these witnesses are available and planning to testify is because they have been furiously attempting to talk to the witnesses, setting up meetings with them, etc.

As Prospect knows, these witnesses all have busy schedules and are all coming from out-of-state. We have slimmed down our witness list in the interest of avoiding duplicative testimony and finishing this proceeding by Friday. As such, we are no longer calling the two witnesses from Caprock.

Further, it looks like Peter Macey from Wells Fargo will not be available to testify. We were unable to work through some of the legal hurdles with Wells Fargo's in-house lawyers that would need to have been resolved before Mr. Macey would be allowed to testify.

We still plan to call Frank Bond, Charlie Cunningham, Robert Fiser, Richard Stowell, David Fuller, and Mike Enmon. It is my hope that we will work with these witnesses to accommodate their busy schedules and allow them to testify in this important proceeding.

Frank Bond and Charlie Cunningham are both available to testify on July 23. Richard Stowell is potentially available on the 23rd, but it is more likely that he will have to testify on the afternoon of the 24th due to a conflict outside of the Country. David Fuller is available on July 25. Mike Enmon and Robert Fiser are available all week.


Documents

I have asked Messrs. Fiser, Fuller, and Stowell to search (and re-search) for documents. I have not had the opportunity to ask Frank Bond to do so because he has been out of town since we last spoke. I finally spoke with Mr. Fuller on Tuesday. He has been out of town and does not return to his office until Saturday. He promised to look again for documents when he returns to his office. He believes that he has sent us everything. As I said before, if

7/25/2007

more documents become available (and I don't think they will), we'll produce them as soon as we get them. But, I reiterate yet again, we do not think there are any more documents. We are just double and triple checking out of an abundance of caution.


Accusation of Sabotage, Surprise, and Confusion

It is ironic that Prospect continually complains of unfair treatment, surprise, etc. considering that: (1) they misled everyone about the existence of the signature pages to the credit agreement, (2) they provided an exhibit list that contains nearly every document in the production and gives no descriptions, (3) they refused to produce "confidential" materials even after Enmon signed a confidentiality agreement, (4) they objected to taking depositions in this case and now are concerned about what "surprise" witnesses may say; and (5) just tonight they sent an email explaining that the time stamps on their document production are misleading.


Enmon points this out only to say that enough is enough. We have an arbitration. It starts Monday. Let's do away with long letters and grand (but baseless) accusations. Let's all roll up our sleeves and get to the bottom of what happened.


Jason A. Itkin
1401 McKinney Street
Suite 2550
Houston, TX 77010
www.arnolditkin.com

---

**From:** Nelson, Timothy G. [mailto:TINELSON@skadden.com]
**Sent:** Thursday, July 19, 2007 8:44 PM
**To:** John Wilkinson
**Cc:** Grinalds, Maura Barry; Lerner, Jonathan; Jason Itkin; Caj Boatright
**Subject:** RE: Prospect Energy Corp. v. Enmon


Dear Mr. Wilkinson,

We respect your busy schedule and would not want to impose on your work tomorrow. However, could we trouble you for clarification on one important threshold point -- namely, a direction that

Claimants' case shall proceed first (as in the ordinary course) and that Respondent's case shall proceed thereafter? Normally this would go without saying, but we have reason to believe that Mr. Itkin has been telling his witnesses that they would be testifying on Monday, thus creating some confusion on this issue. At present, Claimants' witnesses, who are busy senior executives, expect to be testifying on Monday. If there is to be any variation from the normal order of case presentation, we would need to inform those witnesses as soon as possible. Again, we apologize for the intrusion.

Sincerely

Timothy G. Nelson

---

**From:** John Wilkinson [mailto:johnhwilkinson@msn.com]
**Sent:** Thursday, July 19, 2007 7:50 PM
**To:** Jason Itkin; Caj Boatright; Nelson, Timothy G.
**Cc:** Grinalds, Maura Barry; Lerner, Jonathan
**Subject:** Re: Prospect Energy Corp. v. Enmon

I'm off to an out of town mediation which starts early and ends late tomorrow. We will take this up at the commencement of the hearing on Mon. Regards.

John Wilkinson

> ----- Original Message -----
> **From:** Nelson, Timothy G.
> **To:** johnhwilkinson@msn.com ; Jason Itkin ; Caj Boatright
> **Cc:** Grinalds, Maura Barry ; Lerner, Jonathan
> **Sent:** Thursday, July 19, 2007 6:28 PM
> **Subject:** Prospect Energy Corp. v. Enmon
>
> Dear Mr. Wilkinson,
>
> Attached is a PDF copy of a letter from Ms. Grinalds, also delivered by fax today.
>
> Sincerely
>
>
> Timothy G. Nelson
> Counsel
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York NY 10036
> USA
> Direct line (212) 735-2193
> Direct fax (917) 777-2193
> Email: tinelson@skadden.com
> www.skadden.com
>
>
> -------------------------------------------------------------------
> To ensure compliance with Treasury Department regulations, we advise you that, unle

******************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(

Further information about the firm, a list of the Partners and their professional q
******************************************************
==========================================================================

# 07-1047-cv

## United States Court of Appeals

*for the*

## Second Circuit

PROSPECT ENERGY CORPORATION, PROSPECT CAPITAL
MANAGEMENT LLC., JOHN F. BARRY, M. GRIER ELIASEK,
WALTER PARKER and BART DE BIE,

*Petitioners-Appellees,*

— v. —

MICHAEL ENMON,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PETITIONERS-APPELLEES

JONATHAN J. LERNER
MAURA BARRY GRINALDS
TIMOTHY G. NELSON
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
*Attorneys for Petitioners-Appellees*
Four Times Square
New York, New York 10036
(212) 735-3000

**CORPORATE DISCLOSURE STATEMENT**
**PURSUANT TO RULE 26.1 OF THE**
**FEDERAL RULES OF APPELLATE PROCEDURE**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Petitioners Prospect Energy Corporation and Prospect Capital Management LLC

state that no publicly held corporation owns 10% or more of their stock, nor do

they have any parent corporations.

# TABLE OF CONTENTS

1.  The Parties ................................................................................4

2.  Enmon and Prospect Energy Conduct Negotiations in April and May
    2006 Concerning a Potential Acquisition of Caprock's Assets ......................5

    (a)  Enmon and Prospect Energy's Letter Agreement of April 11,
         2006 .......................................................................5

    (b)  The Parties' Express Agreement to Submit "Any Dispute" to
         Binding Arbitration in New York City ......................................8

    (c)  May 2006: No Loan is Made..................................................9

3.  Enmon Repudiates His Obligation to Arbitrate by Commencing a
    Third Party Action in Texas State Court Against Prospect...........................9

4.  Pursuant to Section 10 of the Letter Agreement, Prospect Properly
    Instituted Arbitration Proceedings before the AAA in New York...............10

5.  Prospect Commences the Action in the District Court Below ......................11

6.  The District Court Issues a Temporary Restraining Order Preventing
    Enmon from Proceeding in the Texas Action .................................11

7.  The District Court Compels Arbitration........................................13

8.  The Status of the AAA Arbitration.............................................13

STANDARD OF REVIEW ........................................................19

ARGUMENT ....................................................................20

I.   THE DISTRICT COURT CORRECTLY HELD THAT ENMON
     WAS PARTY TO A BINDING ARBITRATION AGREEMENT.............20

     A.  The Court's Limited "Gateway" Function in Determining
         Arbitrability................................................................20

     B.  On its Face, the Letter Agreement Contains a Written
         Agreement to Arbitrate for Purposes of Section 2, thus
         Mandating Arbitration.....................................................21

     C.  On its Face, The Letter Agreement Is a "Contract" for Purposes
         of Section 2 of the FAA ...................................................22

D.    Under Prima Paint, Enmon's Blanket Claim that the Letter Agreement was Indefinite or Lacked Mutuality is a Matter for the Arbitrator ...................................................................26

II.    THE DISTRICT COURT CORRECTLY REJECTED ENMON'S CLAIM THAT THE ARBITRATION AGREEMENT LACKS CONSIDERATION ...................................................................29

A.    By its Terms, Section 10 of the Letter Agreement Contains Mutual Promises by Both Parties to Resolve Disputes.......................29

B.    In all Events, the Letter Agreement as a Whole Contains Consideration to Support Enmon's Agreement to Arbitrate Disputes ...................................................................32

C.    Cases Dealing with Preliminary Agreements are Inapposite.............35

III.    THE DISTRICT COURT CORRECTLY REJECTED ENMON'S CLAIM THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABLE...................................................................37

A.    Enmon Fails to Show Procedural Unconscionability .........................37

B.    Enmon Fails to Show Substantive Unconscionability ........................40

1.    Because Section 10 Provides for Neutral Adjudication, it Cannot Be Held to be Substantively Unconscionable .............40

2.    Neither the Non-Mutual Arbitration Clause Nor the Hypothetical "Removal Right" (which is Inapplicable) is Unconscionable...................................................................41

3.    Even if Not Mooted, Prospect's Hypothetical "Removal" Right is Not Unconscionable ...................................................48

C.    Enmon's Claim that the Letter Agreement as a Whole is Unconscionable is Improper...................................................................50

IV.    THE DISTRICT COURT CORRECTLY ENJOINED THE TEXAS ACTION ...................................................................52

CONCLUSION ...................................................................53

# TABLE OF AUTHORITIES

## CASES

1210 Colvin Avenue, Inc. v. Tops Markets, LLC, 30 A.D.3d 995, 816 N.Y.S.2d 639 (4th Dep't 2006) ...........................................................29

Adams v. Suozzi, 433 F.3d 220 (2d Cir. 2005) ..........................................21, 27, 28

Adjustrite Systems, Inc. v. GAB Business Services, Inc., 145 F.3d 543 (2d Cir. 1998) ...........................................................................................36

Alexander v. Anthony International, L.P., 341 F.3d 256 (3d Cir. 2003) ...............51

America Dredging Co. v. Plaza Petroleum Inc., 799 F. Supp. 1335 (E.D.N.Y. 1992) .................................................................................................38

Apfel v. Prudential-Bache Securities Inc., 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (1993) ...................................................................31

Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69 (2d Cir. 1989).......36, 37

Arnold v. United Cos. Lending Corp., 511 S.E.2d 854 (W. Va. 1998)...................42

Asturiana de Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc., 20 F. Supp. 2d 670 (S.D.N.Y. 1998).............................................................................30

Baldeo v. Darden Restaurants, Inc., No. 04-CV-2185, 2005 WL 44703 (E.D.N.Y. Jan 11, 2005) ........................................................................44

Bates v. Long Island Railroad, 997 F.2d 1028 (2d Cir. 1993) ...............................46

Battels v. Sears National Bank, 365 F. Supp. 2d 1205 (N.D. Ala. 2005) ...............28

Blimpie Int'l., Inc. v. Blimpie of the Keys, 371 F. Supp. 2d 469 (S.D.N.Y. 2005) .................................................................................................18

Brown v. Cara, 420 F.3d 148 (2d Cir. 2005).........................................................36

Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204 (2006)............... *passim*

iii

Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483 (6th Cir. 2001) ....... 51

Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259
    (2d Cir. 1994)................................................................................... 30

Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360
    (2d Cir. 2003).............................................................................. 23, 27

Century Indemnity Co. v. Clearwater Insurance, No. 06 Civ. 0424, 2007 WL
    1599157 (S.D.N.Y. June 4, 2007) ................................................. 29

Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992).................... 28

Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656
    (Md. 2003) ................................................................................. 30, 47

Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324
    (S.D.N.Y. 2003) ............................................................... *passim*

Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) ......................................... 22

Citizens Bank v. Alafabco, Inc., 539 U.S. 52 (2003) .............................................. 21

Credit Alliance Corp. v. Joshco Min. Corp., 90 F.R.D. 187 (S.D.N.Y. 1981)........ 38

Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775 (2d Cir. 2003) ............ 39, 41

David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245
    (2d Cir. 1991).................................................................................. 51

Davis v. ECPI College of Tech., L.C., No. 05-2122, 2007 WL 840506 (4th
    Cir. Mar. 20, 2007) ...................................................................... 44

Davis v. O'Melveny & Myers, 485 F.3d 1066 (9th Cir. 2007)............................... 42

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)...................................... 52

De Laurentiis v. Cinematografica de las Americas, S.A., 9 N.Y.2d 503, 174
    N.E.2d 736, 215 N.Y.S.2d 60 (1961) .......................................... 27

Doctor's Associates, Inc. v. Distajo, 66 F.3d 438 (2d Cir. 1995) ..................... 19, 30

Doctor's Associates, Inc. v. Hamilton, 150 F.3d 157 (2d Cir. 1998) ............... 19, 53

Doctor's Associates, Inc. v. Stuart, 85 F.3d 975 (2d Cir. 1996) ........................ 17, 47

Dumais v. America Golf Corp., 299 F.3d 1216 (10th Cir. 2002) ............................ 30

Empire Properties Corp. v. Manufacturers Trust Co., 288 N.Y. 242, 43
    N.E.2d 25 (1942) ............................................................................................ 46

Express Industrial & Terminal Corp. v. Department of Transportation, 93
    N.Y.2d 584, 715 N.E.2d 1050, 693 N.Y.S.2d 857 (1999) ............................ 24

Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 408 F.3d 460 (8th Cir.
    2005) ............................................................................................................... 36

Ferguson v. Countrywide Credit Industrial, Inc., 298 F.3d 778
    (9th Cir. 2002) ............................................................................................... 49

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) ............................ 23

G&B Photography, Inc. v. Greenberg, 209 A.D.2d 579, 619 N.Y.S.2d 294
    (2d Dep't 1994) ............................................................................................. 46

Garten v. Kurth, 265 F.3d 136 (2d Cir. 2001) ...................................................... 17, 27

General Atomic Co. v. Felter, 434 U.S. 12 (1977) .................................................. 12

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987) ................... 14, 23

Geoffroy v. Washington Mutual Bank, No. 06 CV 1732 BEN (WMC),
    2007 WL 1334375 (S.D. Cal. May 3, 2007) ................................................ 42

Gill v. World Inspection Network Intel., Inc., No. 06-CV-3187 (JFB), 2006
    WL 2166821 (E.D.N.Y. July 31, 2006) .................................................... 37, 44

Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 534 N.E.2d 824,
    537 N.Y.S.2d 787 (1988)....................................................................... *passim*

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) ...............................23

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004).......................23

Gonzalez v. W. Suburban Imports, Inc., 411 F. Supp. 2d 970
    (N.D. Ill. 2006) .........................................................................................30

Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Automobile
    Truck Drivers Local No. 70, 415 U.S. 423 (1974).........................................49

Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003)......................18, 20, 43

Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000) ...............................47

Hamilton Life Insurance v. Republic National Life Insurance, 291 F. Supp.
    225 (S.D.N.Y. 1968)..................................................................................27

Hamilton v. Aetna Life & Casualty Co., 5 F.3d 642 (2d Cir. 1993) ......................45

Holt v. Feigenbaum, 52 N.Y.2d 291, 419 N.E.2d 332, 437 N.Y.S.2d 654
    (1981)...................................................................................................30, 35

Hooters of America, Inc. v. Phillips, 173 F.3d 993 (4th Cir. 1999) ........................41

Houlihan v. Offerman & Co., 31 F.3d 692 (8th Cir. 1994) ...................................27

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) ....................18, 20, 43

Hueston v. Hueston, No. 98-CV-1126, 1998 WL 903635
    (N.D.N.Y. Dec. 23, 1998)............................................................................27

International Minerals & Mining Corp. v. Citicorp North America, Inc., 736
    F. Supp. 587 (D.N.J. 1990)................................................................ 32-34, 37

Iwen v. U.S. W. Direct, 977 P.2d 989 (Mont. 1999)..............................................42

JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004)..........................39, 50

Jenkins v. First America Cash Advance of Georgia, LLC, 400 F.3d 868

(11th Cir. 2005) ............................................................................51

Jeske v. Brooks, 875 F.2d 71 (4th Cir. 1989) ........................................28

Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 417
    N.E.2d 541, 436 N.Y.S.2d 247 (N.Y. 1981) .................................24

Larrison v. Scarola Reavis & Parent LLP, 11 Misc.3d 572, 812 N.Y.S.2d
    243 (Sup. Ct. New York County 2005) .........................................50

Lytle v. CitiFinancial Services, 810 A.2d 643 (Pa. Super. Ct. 2002).....................42

Madol v. Dan Nelson Automobile Group, 372 F.3d 997 (8th Cir. 2004) ...............51

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983)..................................................................22, 46

Nagrampa v. MailCoup, Inc., 469 F.3d 1257 (9th Cir. 2006) ...........................50-52

In re Nuclear Electrical Insurance & Central Power & Light Co., 926 F.
    Supp. 428 (S.D.N.Y. 1996) .........................................................52

Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362 (2d Cir. 2003) .................28

Outback/Empire I, L.P. v. Kamitis, Inc., 35 A.D.3d 563, 825 N.Y.S.2d 747
    (2d Dep't 2006) ........................................................................33

PacifiCare Health System Inc. v. Book, 538 U.S. 401 (2003) ...............................47

Perl v. Smith Barney Inc., 230 A.D.2d 664, 646 N.Y.S.2d 678 (1st Dep't
    1996) .....................................................................................25

Pervel Industrial, Inc. v. T.M. Wallcovering, Inc., 871 F.2d 7 (2d Cir. 1989)........53

Phox v. Atriums Management Co., 230 F. Supp. 2d 1279 (D. Kan. 2002).............47

Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,
    388 U.S. 395 (1967)............................................................... passim

Qwerty Software, Inc. v. McKinsey & Co., 9 Misc. 3d 1103(A), text

available at 2005 WL 2148853 (Sup. Ct. N.Y. County 2005) ......................24

Roberts v. Atlantic Recording Corp., No. 95 Civ. 3524, 1995 WL 386552
    (S.D.N.Y. June 29, 1995) .............................................................27

Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    170 F.3d 1 (1st Cir. 1999)........................................................51

Rubin v. Sona International Corp., 457 F. Supp. 2d 191 (S.D.N.Y. 2006)............29

SCS Communications, Inc. v. The Herrick Co., 360 F.3d 329 (2d Cir. 2004) .......36

Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 535 N.E.2d 643,
    538, N.Y.S.2d 513 (1989).................................................. *passim*

Salley v. Option One Mgr. Corp., No. 50 EPA 2005, 2007 Pa. LEXIS 1195
    (Pa. May 31, 2007) .....................................................................42

Sandvik AB v. Advent International Corp., 220 F.3d 99 (3d Cir. 2000) ................28

Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361 (Ark.
    2000) ............................................................................................30

Simpson v. MSA of Myrtle Beach, Inc., No. 26293, 2007 S.C. LEXIS 125
    (S.C., Mar. 26, 2007) ...................................................................49

Spahr v. Secco, 330 F.3d 1266 (10th Cir. 2003) .....................................................28

Sphere Drake Insurance v. All America Insurance, 256 F.3d 587 (7th Cir.
    2001) ............................................................................................28

State v. Wolowitz, 96 A.D.2d 47, 468 N.Y.S.2d 131 (2d Dep't 1983) ..................40

Stumm v. Drive Entertainment, Inc., No. 00 Civ. 4676, 2001 U.S. Dist.
    LEXIS 21675 (S.D.N.Y. Dec. 27, 2001).....................................24

Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151 (S.D.N.Y. 2004) .......38, 44

Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004).......................................................42

Teachers Insurance & Annuity Association v. Tribune Co., 670 F. Supp. 491
(S.D.N.Y. 1987).................................................................................36

Thomas James Associates, Inc. v. Jameson, 102 F.3d 60 (2d Cir. 1996)..........22, 23

UBS Warburg LLC v. Auerbach, Pollack & Richardson, Inc., 294 A.D.2d
245, 744 N.Y.S.2d 364 (1st Dep't 2002) ......................................................31

United States v. U.S. Gypsum Co., 333 U.S. 364 (1948)........................................19

Vimar Seguros y Reaseguros S.A. v. M/V Sky Reefer, 515 U.S. 528 (1995) ........48

Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260 (5th Cir.
2004) ..........................................................................................51

Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 443 N.E.2d 441,
457 N.Y.S.2d 193 (1982)........................................................................15, 30

Williams v. Aetna Finance Co., 700 N.E.2d 859 (Ohio 1998)...............................42

Wisconsin Automobile Title Loans, Inc. v. Jones, 714 N.W.2d 155 (Wis.
2006) ..........................................................................................42

Wood v. Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917)...............................33, 34

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const., art. VI, cl. 2 ..............................................................12

9 U.S.C. § 1 ..............................................................................22

9 U.S.C. § 2 ...................................................................1, 3, 14, 21

9 U.S.C. § 4 ...................................................................1, 3, 14, 52

28 U.S.C. § 1441 .........................................................................45

28 U.S.C. § 1442 .........................................................................45

28 U.S.C. § 1446 .........................................................................45

28 U.S.C. § 1450 ................................................................................49

28 U.S.C. § 2283 ................................................................................52

U.S. Dist. Ct. Rules S.D.N.Y., Div. of Bus. Rule 5(b) ...........................................12

## OTHER

14C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
§ 3731 (3d ed. 1998) ...........................................................................45

x

Petitioners-Respondents Prospect Energy Corporation ("Prospect Energy"), Prospect Capital Management LLC ("Prospect Capital"), John F. Barry, M. Grier Eliasek, Walter Parker and Bart De Bie (the "Individual Petitioners" and, collectively with Prospect Energy and Prospect Capital, "Prospect") respectfully submit this Brief in opposition to the appeal of Respondent-Appellant Michael Enmon ("Enmon") from the Order of the United States District Court for the Southern District of New York (Sand, J.) dated February 13, 2007 (1) compelling Enmon to submit all of his disputes with Prospect to a pending AAA arbitration in New York and (2) permanently enjoining Enmon from taking any action on any claims against Petitioners in any other forum, including in Texas state court.

## COUNTER-STATEMENT OF JURISDICTION

Prospect agrees that this Court possesses appellate jurisdiction, and that the district court possessed subject-matter jurisdiction over this action.

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the district court correctly held that the written arbitration provision appearing in the "Letter Agreement" signed by Prospect Energy and Enmon was a presumptively enforceable arbitration provision for purposes of sections 2 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 4.

2.     Whether the district court correctly rejected Enmon's challenge

to the enforceability of the arbitration provision by holding that, under New York law, a provision giving one party (Prospect) the right to choose between litigation and arbitration is permissible.

     3.    Whether the district court correctly rejected Enmon's contention that the arbitration agreement was unconscionable.

## STATEMENT OF THE CASE

     Enmon is a disgruntled would-be borrower who failed to qualify for a $10 million loan from Prospect Energy. He then repudiated the unambiguous and binding arbitration agreement he voluntarily executed in April 2006 upon the advice of counsel as a condition of Prospect Energy's agreement to consider and conduct due diligence on Enmon's request for a loan by initiating an expansive damages action in state court in Beaumont, Texas against Prospect Energy and its employees asserting claims that are indisputably covered by the arbitration agreement. Although Enmon repeatedly emphasizes in this appeal that Prospect Energy undertook no obligation whatsoever to lend him money, and indeed expressly negated any such duty in the parties' written agreement (Enmon Br. at 8-10, 21-22, 25), the gravaman of Enmon's Texas action is that he was damaged in the amount of $50 million by Prospect's failure to make a loan to him. (A-56-68.) In its February 13, 2007 Order, the district court correctly rejected Enmon's attempt to haul Prospect into Texas state court, in derogation of Enmon's explicit

agreement and obligation to arbitrate in New York.

This appeal turns on Sections 2 and 4 of the FAA, 9 U.S.C. §§ 2, 4. Section 2 of the FAA provides that a "written provision" requiring arbitration in a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 4 of the FAA requires a court to compel compliance with such arbitration agreements. Enmon, who admits signing an April 11, 2006 "Letter Agreement" containing an arbitration clause, attempts to evade his obligation to arbitrate under the FAA by unfurling several contrived arguments:

(i)    Enmon claims that the Letter Agreement containing the arbitration clause is not a binding contract. This contention collides with the plain terms of the Letter Agreement executed by both parties which explicitly memorializes a binding and definite "agreement." (See infra § I.C.)

(ii)   Enmon claims that the Letter Agreement is not binding because it lacks "mutual commitment." This argument is squarely foreclosed by the well-established rule that an arbitration clause cannot be avoided by challenging the enforceability of the entire underlying contract. (See infra § I.D.)

(iii)  Enmon claims that the arbitration clause itself lacks consideration because it grants Prospect the option to "waive" arbitration and pursue litigation, while Enmon received no corresponding right. This argument is precluded by

3

controlling New York Court of Appeals authority squarely holding that "mutuality of remedy" is not required where, as here, the agreement to arbitrate is otherwise supported by consideration. (See infra § II.)

(iv)   Enmon claims that the non-mutual arbitration clause is unconscionable. Standing alone, the absence of any evidence of procedural unconscionability defeats this claim.   In all events, Enmon's "unconscionability" theory is based on Prospect's hypothetical option to "remove" arbitration claims to court -- which does not apply where, as here, Prospect is a claimant in arbitration and has affirmatively disavowed any such removal.  Even if this issue were not moot, which it is, once an agreement to arbitrate is found, any challenge to the hypothetical removal procedure is a matter for the arbitrator. Even if this Court were to adjudicate the theoretical "removal" right, it is not unconscionable because any removed claims would be heard in a neutral forum -- the New York courts. (See infra § III.)

Because the district court correctly rejected each of Enmon's arguments, its decision should be affirmed.

## COUNTER-STATEMENT OF FACTS

1.    The Parties

Petitioner Prospect Energy is a publicly traded Maryland corporation, based in New York, New York.  (A-14 ¶ 2.)  Prospect Capital, a Delaware

company also based in New York, is the investment advisor to Prospect Energy. (Id. ¶ 3.) The Individual Petitioners are: (1) John F. Barry, III, the Chief Executive Officer of Prospect Energy and Prospect Capital (A-15 ¶ 4; A-24 ¶ 1); (2) M. Grier Eliasek, the President of Prospect Energy and an officer of Prospect Capital; (A-15 ¶ 5); (3) Walter Parker, a director of Prospect Energy (id. ¶ 6); and (4) Bart de Bie, a Principal of Prospect Capital. (A-573 ¶ 1.)

Respondent Enmon is a resident of either Texas or of New Mexico. (A-15 ¶ 8.) In April 2006, when the Letter Agreement was executed, Enmon claimed a domicile in Albuquerque, New Mexico. (A-623.) By December 2006, when he brought a "cross-action" against Prospect in Texas state court, Enmon asserted a new domicile in Jefferson County, Texas. (A-60 ¶ 10.)[1]

2.    Enmon and Prospect Energy Conduct Negotiations in April and May
      2006 Concerning a Potential Acquisition of Caprock's Assets

      (a)    Enmon and Prospect Energy's Letter Agreement of April 11, 2006

      Prospect Energy is a publicly traded business development company that lends to and invests in companies in the energy industry, often in the form of mezzanine or subordinated loans. (A-16 ¶ 13.) In early 2006, Enmon sought a loan from Prospect Energy in connection with the possible purchase by Enmon of Caprock Pipe and Supply ("Caprock"), a New Mexico-based business. (A-24-25 ¶

---

[1]    Based on his newly-minted Texas address, Enmon purported to block removal of the Texas Action to federal court. (A-60 ¶ 8.)

2.)  The negotiations over the terms of such a loan, and Prospect Energy's consequent due diligence of a proposed financing, occurred during April and May 2006. (Id.)

On April 11, 2006, Prospect Energy and Enmon executed a letter agreement (the "Letter Agreement") memorializing the framework for those negotiations and the principal terms and conditions of a proposed financing of up to $10,000,000[2] "to be considered" by Prospect Energy.  It contained a proposed closing deadline of May 15, 2006.  (See A-623-26.)  The Letter Agreement was executed by both Prospect Energy and Enmon.  (A-574 ¶ 6; A-626.)  In so doing, Enmon acknowledged that he "agreed and accepted" its terms (A-626) and that he had "reviewed [it] with able counsel of [his] own free choosing." (A-624 § 3 (emphasis added).)

The Letter Agreement imposes obligations on both parties in the period prior to the finalization of the proposed loan to Enmon (including the payment of a deposit, due diligence obligations and confidentiality requirements) and establishes the framework for Prospect's consideration and negotiation of the proposed loan.  (See A-623-26.)  The Letter Agreement communicates to Enmon the terms of a financing proposal (the "Proposal") summarized in an attached

---

[2]    Shortly before the proposed closing, Enmon's loan request increased twenty percent to $12,000,000.  (A-286.)

nonbinding term sheet (the "Term Sheet") "for discussion purposes only" to provide up to $10 million of subordinated debt to Enmon pursuant to the terms described both in the Letter Agreement and the Term Sheet. (See A-623 § 1; A-627-32.) Specifically, the first clause of the Letter Agreement provides:

> Prospect Energy Corporation . . . is pleased to provide Mr. Michael Enmon ("Sponsor") with this proposal (the "Proposal") to provide and/or arrange up to $10,000,000 of subordinated secured debt pursuant to the terms set forth in this letter and the attached Summary of Proposed Terms and Conditions dated April 11, 2006 (the "Term Sheet") to fund the acquisition of Caprock Pipe & Supply LP ("Borrower") by Sponsor.

(A-623 § 1.)

The Letter Agreement makes clear that the Term Sheet is not a final or complete financing agreement. Indeed, the Letter Agreement states that the "[t]he Term Sheet does not purport to summarize all of the terms and conditions upon which the proposed financing is to be based, which terms and conditions would be contained fully only in final documentation which must be satisfactory to Prospect." (Id. (emphasis added).)

In contrast to the Term Sheet, the Letter Agreement is fully integrated, complete and final. There is no suggestion anywhere in the Letter Agreement that any further terms or documentation remained to be negotiated before it was complete and binding. Indeed, the Letter Agreement contains a merger clause stating that "[t]here are no other understandings or agreements except as

7

specifically described herein." (A-624 § 5 (emphasis added).) Further, the Letter Agreement makes plain that, unlike the Term Sheet, it creates both immediate and surviving obligations -- even if it is terminated. (See A-626 § 15 ("All obligations described in paragraphs 3 through 14 of this letter shall survive termination . . . .").) The Letter Agreement is therefore a signed, binding agreement between Prospect Energy and Enmon by which they each assumed obligations as a precondition to the consideration and potential grant of funding by Prospect Energy to Enmon.

    (b)    The Parties' Express Agreement to Submit "Any Dispute" to Binding Arbitration in New York City

    Section 10 of the Letter Agreement ("Section 10" of the "Arbitration Agreement") constitutes a binding forum selection clause requiring arbitration in New York:

> This letter shall be governed by and construed in accordance with the internal laws of the State of New York for contracts made and to be enforced therein, without regard to principles of conflicts of laws. Unless Prospect in its sole discretion waives the requirement to arbitrate, the parties agree to submit any dispute to binding arbitration in New York City according to the rules of the American Arbitration Association with the losing party paying the legal and related fees and expenses of the prevailing party. Borrower agrees that Prospect has the right, at any time, to remove any claim in arbitration to a New York court.

(A-625 § 10 (emphasis added).) The Letter Agreement further requires that any litigation concerning the Letter Agreement be commenced in the courts of New York -- subject, of course, to the arbitration clause. (Id.) Both parties expressly

waive jury trial. (Id.) On its face, the Letter Agreement unequivocally provides for arbitration in New York of any dispute Enmon has with Prospect, including all claims relating to the Letter Agreement and proposed financing.

    (c)    <u>May 2006: Prospect Declines to Extend A Loan to Enmon</u>

        Although Prospect Energy and Enmon each retained counsel and engaged in negotiations concerning a possible transaction, Prospect Energy did not ultimately make a loan to Enmon in connection with the possible purchase of Caprock. (A-669:10-12; A-24-25 ¶ 2.) After May 2006, Prospect heard nothing further from Enmon until December 2006, when Prospect received notice that Enmon had commenced litigation against Prospect in state court in the District Court of Jefferson County, in Beaumont, Texas. (Id. ¶ 4.)

    3.    Enmon Repudiates His Obligation to Arbitrate by Commencing a Third Party Action in Texas State Court Against Prospect

        On or about September 21, 2006, Enmon was sued by his own attorney in the Caprock negotiations, Robert Fiser, in the District Court of Texas, Jefferson County, for Enmon's alleged failure to pay Fiser's bills in the amount of $41,705.11 for legal services relating to the Caprock matter. (See A-25 ¶ 3; A-53.)

        On or about December 4, 2006, in direct violation of section 10 of the Letter Agreement, Enmon instituted a $50 million cross-action (the "Texas Action") against Prospect, alleging fraud, statutory fraud, and tortious interference with Enmon's contract with Caprock based on Prospect Energy's decision not to

9

consummate the financing proposed for consideration in the Letter Agreement. (See A-59-69.)[3] Enmon also named as defendants Prospect Capital (Prospect Energy's investment advisor) and each of the individual Petitioners, solely based on actions taken in their capacity as directors, officers, representatives, employees or agents of Prospect Energy in connection with the Letter Agreement and proposed Caprock financing. (See A-61 ¶¶ 13-16; A-65 ¶¶ 28-29.)

4.    Pursuant to Section 10 of the Letter Agreement, Prospect Properly
      Instituted Arbitration Proceedings before the AAA in New York

Because all of Enmon's claims against Prospect (including Prospect Capital and the Individual Petitioners)[4] are subject to the binding arbitration provisions in section 10 of the Letter Agreement, on December 21, 2006, Prospect commenced an arbitration proceeding (the "Arbitration") under the auspices of the American Arbitration Association (the "AAA") in New York.    (See A-76-77.) Prospect's Arbitration Demand seeks enforcement of Section 10's requirement that all disputes between Prospect and Enmon be arbitrated before the AAA in New York, damages for Enmon's breach of that obligation and a declaration that, based on the terms of the Letter Agreement, Prospect Energy has no liability to Enmon

---

[3]    Enmon's Third Party Petition demanded a jury trial (see A-67-68) -- despite the parties' express jury waiver in the Letter Agreement.  (A-625 § 10.)

[4]    Enmon has abandoned his argument below that the arbitration agreement did not cover Enmon's claims against the Individual Petitioners, which the district court rejected.  (A-673:23-674:1.)

for declining to make a loan to him. (Id.)[5]

5.    Prospect Commences the Action in the District Court Below

On January 5, 2007, Prospect commenced an action in the United

States District Court for the Southern District of New York, seeking to compel

arbitration and enjoin the Texas Action.    Personal jurisdiction was founded on

Enmon's express submission, in section 10, to the jurisdiction of the federal or state

courts of New York. (A-625 § 10.)

6.    The District Court Issues a Temporary Restraining Order
      Preventing Enmon from Proceeding in the Texas Action

On January 10, 2007, the AAA held an initial administrative conference call

in the Arbitration.    During that call, Enmon's counsel declared -- despite the

pendency of Prospect's petition in the district court to enforce the parties'

arbitration agreement -- that he intended to seek a stay of the Arbitration from the

State Court in Texas.    (A-681 ¶ 4.)    Enmon's counsel further asserted that the

determination of the existence and scope of the arbitration agreement should be

---

[5]    As a purely defensive action, Prospect filed motions to dismiss the Texas
Action based on the exclusive New York forum selection clause, to compel
arbitration, to stay the Texas Action and to sever the third party claims against
Prospect.    (See A-91-92; A-103-135.)    In making these protective motions,
Prospect expressly reserved its right to seek appropriate judicial relief in the courts
of New York, which it consistently maintained was the forum invested with
exclusive jurisdiction to adjudicate any such disputes. (See A-625 § 10.)    The
Texas court never adjudicated any of these motions, which were later withdrawn
after the district court enjoined Enmon from proceeding in the Texas Action.

11

decided under the law of Texas or New Mexico by the Texas state court, despite section 10's explicit New York choice of law and New York choice of forum provision. (Id.) He also sent a letter to the AAA memorializing his client's repudiation of section 10. (See A-681 ¶ 5; A-815-17.)

On January 11, 2007, to preserve the Arbitration and stave off a preemptive adjudication by the Texas state court on the enforceability of the Arbitration Agreement, Prospect sought a temporary restraining order before Judge Robert Patterson, sitting in Part I.[6] Prospect's application was made on notice, in conformity with Rule 65(b) of the Federal Rules of Civil Procedure. (A-686 ¶ 19.) Judge Patterson granted a TRO restraining the Texas Action pending the disposition of Prospect's Petition to Compel Arbitration. (A-136-38.)[7]

---

[6]    The case was assigned to Judge Robert Carter, who was unable to hear the application. The application was referred to Judge Patterson pursuant to U.S. Dist. Ct. Rules S.D.N.Y., Div. of Bus. Rule 5(b).

[7]    Rather than avail himself of his right to be heard, Enmon used the period between receiving that notice and the hearing on Prospect's application to obtain an ex parte order from the judge in the Texas Action which purported to bar Prospect from seeking relief in federal court (A-569:14-22) -- despite the constitutional prohibition against such an order. See Gen. Atomic Co. v. Felter, 434 U.S. 12, 18-19 (1977) (under the Supremacy Clause, state court lacked the power to bar a litigant from filing and prosecuting an action in federal court, including federal actions to enforce arbitration proceedings: "[t]he right to pursue federal remedies and take advantage of federal procedures and defenses in federal actions" may not be restrained by a state court); U.S. Const., art. VI, cl. 2.

7.    The District Court Compels Arbitration

The Petition was heard before Judge Sand on January 26, 2007 (A-529-72) and February 13, 2007 (A-633-76).[8]  At the conclusion of that hearing, Judge Sand determined that the "arbitration agreement [was] valid and enforceable, and direct[ed] that it go forward as scheduled."  (A-675:14-16.)  The court further issued an injunction "[i]n preservation of that order," enjoining Enmon from further prosecuting the Texas Action.  (A-675-66.)

8.    The Status of the AAA Arbitration

As Judge Sand noted, an arbitrator had been selected.  (A-667:1-5.) The arbitration is scheduled for final hearings beginning July 23, 2007.

## SUMMARY OF ARGUMENT

Enmon's appeal represents a last attempt to evade his unequivocal duty to arbitrate in New York dictated by section 10.  None of Enmon's arguments to evade arbitration passes muster under the well-settled FAA case law of this Circuit and the United States Supreme Court.

First, Enmon persists mischaracterizing the Letter Agreement as non-binding by conflating the Letter Agreement with the indisputably non-binding

---

[8]    Although Judge Sand initially sat in Part I, he continued to preside over the action pursuant to Rule 5(b) of the Division of Business Rules of the district court. (A-571:21-72:5.)

13

Term Sheet.  (Enmon Br. at 19-20.)  As the district court found, however, the Letter Agreement is a "<u>freestanding binding agreement between the parties</u>."  (A-668:20-21 (emphasis added).)  It was signed by Prospect and Enmon as an "agreement" -- and those signatures, standing alone, manifested the mutual assent of both parties to form a binding "agreement."  <u>See</u> <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 845 n.4. (2d Cir. 1987) ("signature" manifests "assent" to a contract containing arbitration clause).  As the district court correctly held, the Letter Agreement "<u>is a separate document from the nonbinding term sheet</u>" (A-669:5-8 (emphasis added).)  On its face, section 10 of the Letter Agreement is therefore a "written [arbitration] provision in . . . a contract" for purposes of Section 2 of the FAA, and deemed valid, binding, and enforceable through a motion to compel arbitration.  9 U.S.C. §§ 2, 4.

Enmon also recycles the strained argument he advanced below that Prospect failed to make any binding promises, thereby depriving the Letter Agreement of "mutual commitment."  (Enmon Br. at 32.)  As a threshold matter, even if there were any colorable challenge to the adequacy of the consideration Prospect gave under the Letter Agreement, and there is none, it would not enable Enmon to evade arbitration.  Under the Supreme Court's controlling decisions in <u>Prima Paint Corp. v. Flood & Conklin Manufacturing Co.</u>, 388 U.S. 395 (1967) and <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 126 S. Ct. 1204 (2006), such

14

challenges must be adjudicated by the arbitrator.   In any event, the Letter Agreement evidences numerous separate binding promises by Prospect Energy and, therefore, contains ample consideration.   (See infra § II.)

Enmon also contends that the arbitration clause in the Letter Agreement is unenforceable because it permits Prospect to elect between arbitration and litigation.   (Enmon Br. at 32-43.)   As the district court correctly held, under controlling New York law, "there is no requirement for mutuality in agreements to arbitrate."   (A-672:22-24.)   Accordingly, a non-mutual arbitration clause is enforceable, provided that one party's promise to arbitrate is supported by "consideration."   Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 137, 535 N.E.2d 643, 646, 538, N.Y.S.2d 513, 516 (1989).   Here, consideration for Enmon's agreement to arbitrate can be found within the four corners of section 10 itself, which places legally binding constraints on the manner in which Prospect may pursue its legal rights, including:  (1) Prospect's promise to pay Enmon's attorney's fees and costs if Enmon is the prevailing party; (2) Prospect's promise to pursue litigation only in New York; and (3) Prospect's jury trial waiver.   These binding promises constitute ample consideration for Enmon's promise to arbitrate.   See Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 464, 443 N.E.2d 441, 444, 457 N.Y.S.2d 193, 196 (1982) (consideration is anything "'promised, done, forborne or suffered by the party to whom the promise is made as consideration for the

promise made to him'") (citation omitted).  Furthermore, as the district court noted, the Letter Agreement, as a whole, contains numerous other mutual promises, including that "Prospect agreed in good faith to expend its time and efforts and resources in furtherance of a proposed transaction."  (A-672:20-22.)  Standing alone, this obligation constitutes sufficient consideration for any promise by Enmon, including the obligation to arbitrate.  (See infra § II. B.)

Last, Enmon reiterates his claim below that the Arbitration Agreement is unconscionable.  As the district court found, however, this claim "has no basis on the record."  (A-672:25-673:3.)  As a threshold matter, Enmon's unconscionability claim fails because he presents no evidence relating to, much less establishing, procedural unconscionability, a sine qua non to any finding of unconscionability.  See Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787, 791 (1988).  In any event, this argument is foreclosed by Enmon's express representation that he had "reviewed this agreement with able counsel of [his] own free choosing" (see A-624 § 3 (emphasis added)), the very counsel (Fiser) who later sued Enmon for over $41,000 in legal fees from the Caprock transaction.  (A-53.)[9]

---

[9]    Enmon's gratuitous assertion that the Letter Agreement was a "prelude" to a "fraud" in which Prospect supposedly "str[ung] him along" in the expectation of financing, only to withdraw from the deal (Enmon Br. at 4, 12) -- even if supported, (cont'd)

Even if substantive unconscionability alone were a sufficient ground for revocation of the Arbitration Agreement, and it is not, Enmon's argument ignores controlling New York authority squarely holding that a non-mutual arbitration clause is not unconscionable. See Sablosky, 73 N.Y.2d at 137, 535 N.E.2d at 646, 538 N.Y.S.2d at 516 (rejecting unconscionability challenge to clause permitting employer to elect litigation or arbitration before one of two arbitral bodies of its choice even after employee commenced litigation). Although Section 10 permits Prospect to "remove" actions from arbitration, that removal right is merely another form of non-mutual remedy which would be enforceable under Sablosky.

Here, however, neither party is actually seeking to enforce any removal right. Prospect is the "Claimant" bringing the arbitration, rendering the removal right inapplicable, [10] and mooting any unconscionability challenge based on the purely hypothetical possibility that it may have applied in some other situation. See Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996)

(cont'd from previous page)

which it is not, is irrelevant as such a challenge would be a matter exclusively for the arbitrator. See Prima Paint, 388 U.S. at 403-04; Garten v. Kurth, 265 F.3d 136, 143 (2d Cir. 2001) ("a mere claim that the 'arbitration clause is an element of the scheme to defraud'" is not sufficient to challenge arbitrability) (quotation and citations omitted).

[10]    The only reasonable interpretation of the "removal" right is that, consistent with civil practice, it is exercisable only where Prospect is a respondent in arbitration. (See infra § III.B.3.)

17

(rejecting challenge to arbitration based on a purely speculative claim that a franchisor might engage in unfair tactics).

Moreover, once the Court performs its limited "gateway role" in determining the existence of an agreement to arbitrate (which plainly exists here), secondary issues concerning "the validity and meaning of specific provisions within the arbitration agreement" -- including the effect of Prospect's hypothetical removal right -- are "a matter for the arbitrator to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). Under Howsam, the Court's gateway function is limited to the "narrow" question of arbitrability, 537 U.S. at 83, and does not extend to procedural questions about the "kind of arbitration proceeding the parties agreed to." Green Tree, 539 U.S. at 452; Blimpie Int'l., Inc. v. Blimpie of the Keys, 371 F. Supp. 2d 469 (S.D.N.Y. 2005) (consolidation issue was for arbitrator). Enmon's challenge to Prospect's theoretical removal right is a quintessential procedural matter committed to the arbitrator. Indeed, the theoretical removal right only accrues after the commencement of arbitration. The question of how, if at all, Prospect could exercise its removal right is therefore a procedural matter that the arbitrator is "well situated to answer," Green Tree, 539 U.S. at 452-53, and cannot be invoked to avoid arbitration.

        In all events, even if Prospect were seeking to enforce a removal right, and it is not, and even if this procedure were a matter for the Court rather than the

arbitrator, it would not render the arbitration agreement unconscionable because, even after removal, Enmon's right to a <u>neutral forum</u> remains unaltered. <u>See Ciago v. Ameriquest Mtg. Co.</u>, 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) (dispute settlement clause which provided for adjudication before a neutral forum was not unconscionable).

In the final analysis, none of Enmon's facile arguments can overcome his binding written agreement, executed on the advice of counsel, "to submit any dispute to binding arbitration in New York City according to the rules of the American Arbitration Association." (A-625 § 10.) Accordingly, the district court correctly applied section 4 of the FAA to compel Enmon to arbitrate and correctly enjoined the Texas State Action. Its decision must be affirmed.

## STANDARD OF REVIEW

Because a district court's decision to compel arbitration is reviewed de novo, <u>Doctor's Associates, Inc. v. Hamilton</u>, 150 F.3d 157, 160 (2d Cir. 1998); <u>accord Doctor's Associates, Inc. v. Distajo</u>, 66 F.3d 438, 444 (2d Cir. 1995), the order below may be affirmed on any grounds supported by the record. Moreover, as Enmon concedes (Enmon Br. at 17), the district court's factual findings may only be reversed if they are "clearly erroneous." <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364 (1948).

## ARGUMENT

### I.
### THE DISTRICT COURT CORRECTLY HELD THAT ENMON
### WAS PARTY TO A BINDING ARBITRATION AGREEMENT

**A.    The Court's Limited "Gateway" Function in Determining Arbitrability**

In a motion to compel arbitration, a court's review of an arbitration agreement is limited to "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). "Once th[e] Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide." Ciago, 295 F. Supp. 2d at 330 (emphasis added) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). Accordingly, if this Court affirms, as it should, the district court's finding that the parties entered into a valid arbitration agreement, it should compel arbitration. Any collateral issues concerning "specific provisions within the agreement to arbitrate," including the effect of Prospect's hypothetical removal right (see infra § III.B.2), are matters for the arbitrator to decide.

Moreover, challenges to arbitrability must be confined to allegations that specifically address the arbitration clause itself, not the validity of the contract as a whole, which is exclusively for the arbitrator to decide. See Buckeye, 126 S. Ct. at 1209 ("[U]nless the challenge is to the arbitration clause itself, the issue of

the contract's validity is considered by the arbitrator in the first instance."); accord

Prima Paint, 388 U.S. at 402-04; Adams v. Suozzi, 433 F.3d 220, 226 (2d Cir.

2005). In confining itself to issues of "arbitrability" (A-668:4-5) the district court

correctly applied these standards.

**B.    The Letter Agreement Contains a Written Agreement to
        Arbitrate for Purposes of Section 2, thus Mandating Arbitration**

By section 10 of the Letter Agreement, which the district court

correctly termed an "arbitration agreement" (A-672:18), Enmon unequivocally

agreed "to submit any dispute to binding arbitration in New York City according to

the rules of the American Arbitration Association." (A-625 § 10.) On its face, this

clause constitutes a "written provision in . . . a contract evidencing a transaction

involving commerce to settle by arbitration a controversy thereafter arising out of

such contract or transaction" under section 2 of the FAA, 9 U.S.C. § 2 (emphasis

added).[11]   As such, it is deemed by section 2 to be "valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." Id.

Both the United States Supreme Court and this Court have

emphasized that the FAA embodies a federal policy strongly favoring arbitration

---

[11]   The FAA applies to any contract that "evidenc[es] a transaction involving
commerce." See 9 U.S.C. § 2; see also 9 U.S.C. § 1; Citizens Bank v. Alafabco,
Inc., 539 U.S. 52, 56 (2003) (reach of FAA coextensive with Commerce Clause).
There is no dispute that the Letter Agreement involves "interstate commerce."

and requires courts to compel arbitration unless there is no conceivable way in which a dispute could come within an arbitration provision:

> Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (citations omitted); see also Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996) (FAA's strong presumption in favor of arbitration requires a district court to compel arbitration "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'") (citation omitted).[12]

**C.    On its Face, The Letter Agreement Is a "Contract" for Purposes of Section 2 of the FAA**

On appeal, Enmon pretends that he never entered into any binding agreement with Prospect. (Enmon Br. at 19-21.) The district court properly found, however, that the four-page Letter Agreement is a "freestanding binding agreement

---

[12]    See also, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) (enforcing arbitration agreement and noting benefits of arbitration); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (noting that "provisions [of the FAA] manifest a 'liberal federal policy favoring arbitration agreements'") (citation omitted).

between the parties." (A-668:20-21.) It is signed by Prospect's authorized officer as a "letter agreement" in the name of "Prospect Energy Corporation" (A-626) and counter-signed by Enmon underneath the words "Agreed to and Accepted." (Id. (emphasis added).) Under New York law, which explicitly governs,[13] the parties' mutual signature manifests both parties' assent to legally binding obligations, precluding Enmon's argument that the Letter Agreement is not a "contract" for purposes of Section 2. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (enforcing arbitration clause; holding that "a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them'") (quoting Metzger v. Aetna Ins., 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920)); Thomas James, 102 F.3d at 65 n.2 (finding that a signed submission to securities arbitration was a "contract" for purposes of section 2 and that "[the employee's signature] manifest[ed] his assent" to that contract); Genesco, 815 F.2d at 845 n.4 (party's "signature" constituted "assent" to a contract containing arbitration clause).[14]

---

[13]    In determining arbitrability, state law (here, New York law selected by the parties) applies. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364-65 (2d Cir. 2003). (See also A-625 § 10 (Letter Agreement governed by New York law).)

[14]    The four-page Letter Agreement, memorializing the parties' specific agreement in detail, bears no resemblance to the random writings cited by Enmon as examples of contracts lacking a "manifestation of mutual assent." (Enmon Br. (cont'd)

23

Enmon also advances for the first time the frivolous argument that the lack of a corresponding statement by Prospect that it "[a]greed to and [a]ccepted" the Letter Agreement "shows the absence of any intent by both parties to enter into a binding agreement." (Enmon Br. at 28-29.) As a matter of law, when a letter is transmitted by one party (Prospect) to another (Enmon), with an invitation to sign and accept its terms, the letter becomes a binding contract upon execution by the recipient. See Stumm v. Drive Entm't, Inc., No. 00 Civ. 4676, 2001 U.S. Dist. LEXIS 21675, at *11-12 (S.D.N.Y. Dec. 27, 2001) (letter agreement requested signature by recipient "'if the[] terms are acceptable'"; recipient, as "offeree," expressed its assent when one of its representatives signed the letter) (citation omitted); Qwerty Software, Inc. v. McKinsey & Co., 9 Misc. 3d 1103(A) (unpublished table decision), text available at 2005 WL 2148853, at *2 (Sup. Ct. N.Y. County 2005) (where a letter from one party to another stated, "If this letter correctly sets forth our understanding, please sign below whereupon it will

---

(cont'd from previous page)

at 22.) See Express Indus. & Terminal Corp. v. Dep't of Transp., 93 N.Y.2d 584, 590, 715 N.E. 2d 1050, 1053, 693 N.Y.S.2d 857, 860 (1999) (government department had issued a purported "permit" concerning a future lease that not only lacked essential terms, but also contained "blank spaces" that no "court could objectively decipher"); Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 417 N.E.2d 541, 436 N.Y.S.2d 247 (N.Y. 1981) (tenancy agreement contemplating renewal "at annual rentals to be agreed upon" could not constitute an option to renew because it lacked a "material term"). In all events, the issue in Martin (the asserted non-existence of a material term) would be a question for the arbitrator. (See infra § I.A.)

24

constitute a binding agreement between us," the recipient "effectively creat[ed] the . . . contract" by signing and dating the letter); see also Gillman, 73 N.Y.2d at 10-11, 534 N.E.2d at 827-29, 537 N.Y.S.2d at 790-92 (signature on credit application below statement that agreement on reverse "is hereby accepted" was sufficient to "conclusively" bind signer, regardless of claim he did not read it).  By its unequivocal terms, the executed signature block on the Letter Agreement evidences Enmon's assent to a binding agreement.

Of similar ilk is Enmon's position that the Letter Agreement is subject to the "non-binding" disclaimers at the opening of the attached Term Sheet (Enmon Br. at 20-21).[15]  Despite Enmon's attempts to obfuscate it, the Letter Agreement and the proposed Term Sheet are separate and distinct documents.  Indeed, the Letter Agreement emphasizes the clear distinction between itself and the separate Term Sheet at least nine times in the space of four pages. [16]  As the district court

---

[15]    Unlike in Perl v. Smith Barney Inc., 230 A.D.2d 664, 646 N.Y.S. 2d 678 (1st Dep't 1996), where the broking contract referenced an "account booklet" which set forth certain further binding terms, see 646 N.Y.S.2d at 679, the fully integrated contract in this case (the Letter Agreement) expressly stated that the other writing (the Term Sheet) was non-binding (A-623 § 1) and prohibited amendments to the Letter Agreement except as provided therein. (See A-624, 626 §§ 5, 15.)  Accordingly, Enmon's attempt to analogize this case to cases where other contract terms were "incorporated by reference" (Enmon Br. at 19-20) is meritless.

[16]    See A-623 § 1 ("pursuant to the terms set forth in this letter and the attached Summary of Proposed Terms and Conditions dated April 11, 2006 (the 'Term (cont'd)

held:

> [R]eading the April 11th letter and the term sheet, one can only
> conclude that the letter agreement was a separate document from the
> nonbinding term sheet, which was signed by the parties and which
> caused Mr. Enmon to transmit to Prospect $25,000, and cause both
> parties to go forward in an attempt to consummate the Caprock
> acquisition. Obviously, that acquisition never took place, which is
> why the parties are in dispute.

(A-669:5-12 (emphasis added).) Accordingly, the Letter Agreement is a "contract"

for purposes of section 2 of the FAA.

**D.    Under <u>Prima Paint</u>, Enmon's Blanket Claim that the Letter Agreement
was Indefinite or Lacked Mutuality is a Matter for the Arbitrator**

Enmon contends that the Letter Agreement, if read as a "single

instrument," should be considered non-binding because it does not "require

Prospect to do anything" and therefore lacks a "mutual commitment to work

---

(cont'd from previous page)

Sheet')"; "not limited to the terms set forth herein or in the Term Sheet") (emphasis
added); id. § 2 ("compliance with all the terms and conditions set forth in the Term
Sheet and this letter") (emphasis added); A-624 § 5; ("Neither this letter, including
the attached Term Sheet, nor its contents are to be divulged"; "Borrower . . . shall
not refer to this letter, the Term Sheet or Prospect in any communication with any
other party except with the written consent of Prospect") (emphasis added); id. § 8
("You agree that this letter and the related term sheet are for your confidential use
only") (emphasis added); A-624-25 § 9 ("the Borrower hereby indemnifies and
holds harmless Prospect . . . from an against any and all losses . . . relating to this
letter or the transactions contemplated hereby") (emphasis added); A-625 § 10
("courts located in New York County . . . shall have exclusive jurisdiction to hear
and determine any claim or dispute . . . pertaining to this letter, the term sheet, the
financing or the transaction under consideration") (emphasis added); A-626 § 15
("No modification or waiver of the requirements set forth in the Term Sheet or this
letter shall be effective unless . . . .") (emphasis added).

together." (Enmon Br. at 31-32.) This claim is quintessentially a matter to be resolved by the arbitrator, not the court. See Buckeye, 126 S. Ct. at 1209 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); accord Prima Paint, 388 U.S. at 402-04; Adams v. Suozzi, 433 F.3d 220, 226 (2d Cir. 2005); Hamilton Life Ins. v. Republic Nat'l Life Ins., 291 F. Supp. 225, 237 (S.D.N.Y. 1968) ("lack of consideration" of a contract is not a basis for challenging an arbitration clause, absent an attack on the clause itself), aff'd, 408 F.2d 606 (2d Cir. 1969); Hueston v. Hueston, No. 98-CV-1126, 1998 WL 903635, at *2 (N.D.N.Y. Dec. 23, 1998) (same); Roberts v. Atlantic Recording Corp., No. 95 Civ 3524, 1995 WL 386552, at *1 (S.D.N.Y. June 29, 1995) (compelling arbitration, finding that if "the dispute concerns the validity of a substantive provision under the common law such as questions of mutuality, consideration, and fraud, it must be submitted to arbitration"); De Laurentiis v. Cinematografica de las Americas, S.A., 9 N.Y.2d 503, 508-09, 174 N.E.2d 736, 738, 215 N.Y.S.2d 60, 62-63 (1961) (argument that a contract was "illusory" and "so lacking in mutuality that it bound neither party and could not produce an arbitrable dispute" was "for the arbitrators and not for the court").[17]

_____

[17]    Accord Houlihan v. Offerman & Co., 31 F.3d 692, 694 n.5 (8th Cir. 1994) (a (cont'd)

None of the authorities cited by Enmon (Enmon Br. at 17-19) supports his unprecedented claim that a Court may invalidate an arbitration agreement based on the contention that the contract, as a whole, lacks "mutual commitment." (Id. at 32.) On the contrary, consistent with Buckeye, these cases show that a court's gateway role is limited to challenges to "whether any agreement between the alleged obligor and obligee was ever concluded," see Buckeye 126 S. Ct. at 1208 n.1 (emphasis added), such as forgery, absence of mental capacity, an agent's lack of authority to bind a principal, or non-fulfillment of expressly-agreed conditions precedent -- none of which apply here.[18]  By contrast, "the issue of [a] contract's

---

(cont'd from previous page)

"lack of consideration defense" that "applies to the contract as a whole" was "clearly a matter for the arbitrator"); Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir. 1989) (same); Battels v. Sears Nat'l Bank, 365 F. Supp. 2d 1205, 1215 (N.D. Ala. 2005) (attempt to evade arbitration by arguing "agreements" were "illusory" was impermissible under "the Prima Paint rule that arguments that go to the existence of a contract as a whole are to be resolved by the arbitrator and not the court").

[18]    See Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362, 369 (2d Cir. 2003) (addressing arbitrability where contract was forged); Adams, 433 F.3d at 226 (addressing whether the non-fulfillment of "condition precedent to contract formation" could affect arbitrability); Spahr v. Secco, 330 F.3d 1266 (10th Cir. 2003) (determining whether alleged "mental incapacity" due to Alzheimer's disease vitiated arbitration clause); Sphere Drake Ins. v. All Am. Ins., 256 F.3d 587 (7th Cir. 2001) (issue of whether an arbitration clause signatory possessed "authority to bind" its alleged principal was for the court to determine); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 107 (3d Cir. 2000) (same); Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 855 (11th Cir. 1992) (whether signature on arbitration agreement was forged was matter for the court).

28

validity" is a matter for the arbitrator.  See id.[19]  Accordingly, Enmon's blanket

challenges to the Letter Agreement are not a basis for challenging arbitrability.

## II.
## THE DISTRICT COURT CORRECTLY REJECTED ENMON'S CLAIM THAT THE ARBITRATION AGREEMENT LACKS CONSIDERATION

### A.    By its Terms, Section 10 of the Letter Agreement Contains Mutual Promises by Both Parties to Resolve Disputes

Enmon also contends that the Arbitration Agreement itself is

unenforceable as "non-mutual" and not supported by consideration.  (Enmon Br. at

43-48.)  Enmon concedes, however, as he must, that "[m]utuality of remedy is not

required in arbitration contracts" under New York law.  Sablosky, 73 N.Y.2d at

137, 535 N.E.2d at 646, 538 N.Y.S.2d at 516; accord 1210 Colvin Ave., Inc. v.

Tops Mkts., LLC, 30 A.D.3d 995, 996, 816 N.Y.S.2d 639, 640 (4th Dep't 2006).

Thus, under Sablosky, a one-way "option" to pursue or forego arbitration is

---

[19]    Enmon's claim that Buckeye supports his position (Enmon Br. at 19 n.2) ignores what Buckeye actually says.  Buckeye held that the references in section 2 of the FAA to "contract[s]" incorporate a reference to "putative contracts," i.e., contracts whose validity or effectiveness might be open to challenge either on grounds of potential voidness or voidness ab initio.  See 126 S. Ct. at 1210 and n.3 (emphasis added); Century Indem. Co. v. Clearwater Ins., No. 06 Civ. 0424, 2007 WL 1599157, at *3 n.39 (S.D.N.Y. June 4, 2007) ("[T]he Supreme Court has recently made it clear that, unless a party is challenging 'the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'") (citation omitted); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 196 (S.D.N.Y. 2006) ("The Supreme Court held that an arbitrator, not the trial court, should resolve whether a contract is . . . void ab initio.)  Because, on any view, the Letter Agreement is a "putative contract," Buckeye's holding is fatal to Enmon's position.

enforceable, provided that it is "support[ed]" by "consideration."  73 N.Y.2d at 137,

535 N.E.2d at 646, 538 N.Y.S.2d at 516.[20]

Here, such consideration exists even within the four corners of

Section 10 of the Letter Agreement.  Under New York law, consideration is any

"specific, bargained for legal detriment" incurred by the promisee.  Holt v.

Feigenbaum, 52 N.Y.2d 291, 299, 419 N.E.2d 332, 336, 437 N.Y.S.2d 654, 658

(1981).  Consideration can take the form of anything "promised, done, forborne or

suffered by the party to whom the promise is made as consideration for the

promise made to him."  Weiner, 57 N.Y.2d at 464, 443 N.E.2d at 444, 457

N.Y.S.2d at 196 (citation omitted).  Consideration need not be "coextensive or

even proportionate," id. at 464, 443 N.E.2d at 445, 457 N.Y.S.2d at 197 -- indeed,

"the value or measurability of the thing forborne or promised is not crucial so long

---

[20]    Because Enmon concedes the application of New York law, as stated in
Sablosky, the non-New York minority view cases he cites (Enmon Br. at 43 n.9
(e.g., Dumais v. Am. Golf Corp., 299 F.3d 1216 (10th Cir. 2002) (New Mexico);
Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656 (Md. 2003)
(Maryland); Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361
(Ark. 2000) (Arkansas); Gonzalez v. W. Suburban Imports, Inc., 411 F. Supp. 2d
970 (N.D. Ill. 2006) (Illinois law) are inapposite, especially given that, as this
Court has expressly noted, "[m]ost courts" in other states have "arrived at the same
conclusion" as Sablosky.  Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451-52
(2d Cir. 1995) (emphasis added).

30

as it is acceptable to the promisee." Id. (emphasis added).[21]

Applying these principles, the dispute resolution provisions of section 10 of the Letter Agreement contain ample consideration. First, in any litigation or arbitration, Prospect agrees that if it is not the prevailing party, it will pay Enmon his attorney's fees and costs. (See A-625 § 10.) On its face, this undertaking provides sufficient consideration because it represents Prospect's surrender of its right to invoke the usual rule applicable in New York arbitrations, namely, that the losing party cannot be subject to an award of attorney's fees. [22] Moreover, under section 10, Prospect agrees in advance to limit its choice of forum to (a) arbitration before the AAA, or (b) litigation in a court in New York, New York. (See A-625 § 10.) If litigation is pursued, Prospect waives its right to a jury trial. (Id.) It is simply no answer for Enmon to claim that "because Prospect has its principal place

---

[21]    See also Apfel v. Prudential-Bache Sec. Inc., 81 N.Y.2d 470, 475, 616 N.E.2d 1095, 1097, 600 N.Y.S.2d 433, 435 (1993) ("[p]arties to a contract are free to make their own bargain, even if the consideration exchanged is grossly unequal or of dubious value."), Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 265 (2d Cir. 1994) ("It is well established that the 'slightest consideration is sufficient to support the most onerous obligation' and that the courts are not to inquire into the adequacy of consideration.") (citation omitted).

[22]    See Asturiana de Zinc Mktg., Inc. v. LaSalle Rolling Mills, Inc., 20 F. Supp. 2d 670, 674-75 (S.D.N.Y. 1998) (New York arbitrators may not award attorneys' fees absent an express contractual agreement authorizing the award); accord UBS Warburg LLC v. Auerbach, Pollack & Richardson, Inc., 294 A.D.2d 245, 246, 744 N.Y.S.2d 364, 365 (1st Dep't 2002), leave to appeal denied, 100 N.Y.2d 504, 793 N.E.2d 411, 762 N.Y.S.2d 874 (2003).

31

of business in New York county and thus is necessarily subject to jurisdiction and venue in New York, these promises do not constitute a detriment to Prospect." (Enmon Br. at 44 n.11.)  This facile argument overlooks that the limitation on Prospect's forum choice and its surrender of its right to a jury trial, standing alone, constitute legal detriments, sufficient to sustain the arbitration clause.

**B.     In all Events, the Letter Agreement as a Whole Contains Ample Consideration to Support Enmon's Agreement to Arbitrate Disputes**

Even if Section 10 itself did not furnish adequate consideration, which it does, the Letter Agreement contains ample consideration to support the arbitration agreement.  As the district court held, the Letter Agreement contained consideration "in that Prospect agreed in good faith to expend its time and efforts and resources in furtherance of a proposed transaction."  (A-672:19-22 (emphasis added).)  Consideration is also inherent in Prospect's provision to Enmon of a proposal that was of undoubted value as an important step on the path to obtaining financing.  (See A-623 § 1.)

As the district court observed, "[i]t is quite common, indeed it is more likely the rule than the exception, that in transactions of this sort, the entity in the role which Prospect was to engage in with respect to this transaction are the subject of an agreement between the parties short of the actual consummation of the transaction."  (A-668:25-669:4.)    International Minerals & Mining Corp. ("IMMCO") v. Citicorp North America, Inc., 736 F. Supp. 587 (D.N.J. 1990), a

32

case with strong parallels to the this one, illustrates this point. In that case, as here, a disgruntled would-be borrower sued a potential lender in connection with the putative lender's decision not to make a loan. There, as here, the parties signed a "formal letter indicating [the lender's] willingness to structure a possible loan," which "set[] forth a set of proposed terms for the establishment of a loan facility," id. at 591, but also "emphasized" that the letter was "'only a letter of proposal and [was] not intended nor should be construed as a commitment on the part of the [lender].'" Id. (quoting the letter). The court held that the "letter of proposal," although not the same as a final loan agreement, nevertheless constituted a binding contract because it "constituted more than a unilateral request to fund a loan or to do business with a certain company," and was "an <u>integrated agreement to bargain in good faith over the possibility of funding the assets</u>." Id. at 595 (emphasis added).[23]

Here, as in <u>IMMCO</u>, the parties entered into an agreement under which Prospect agreed to <u>consider</u> in good faith a possible transaction. Indeed,

---

[23]    Even if the obligation to use "good faith efforts" were not expressly acknowledged in the Letter Agreement, it would have been implied as a matter of New York contract law. <u>See</u> <u>Wood v. Duff-Gordon</u>, 222 N.Y. 88, 91-92, 118 N.E. 214, 214-15 (1917) (holding, under New York law, that every contract contains an implied duty of good faith which supplies consideration for the contract); <u>accord</u> <u>Outback/Empire I, L.P. v. Kamitis, Inc.</u>, 35 A.D.3d 563, 563, 825 N.Y.S.2d 747, 747 (2d Dep't 2006); <u>see also</u> <u>IMMCO</u>, 736 F. Supp. at 595 n.7 (noting that consideration was derived from the obligation of good faith found in any contract).

section 10 of the Letter Agreement explicitly acknowledges Prospect Energy's obligation to apply "good faith" efforts and provides that such good faith may be "conclusively shown by evidence, without more, that Prospect has gathered or reviewed more than fifty pages of due diligence materials relating to the proposed transaction." (A-625 § 10).[24] On its face, this "good faith" commitment constitutes consideration.[25] Moreover, <u>Enmon admits that Prospect actually did provide consideration by conducting due diligence</u> and hiring attorneys who then prepared documentation toward a financing (<u>see</u> A-819 ¶¶ 2-3; A-641) -- demolishing any possible argument that no consideration was provided.

Beyond these elements, which furnish ample consideration, there are also several further <u>express obligations</u> in the Letter Agreement evidencing

---

[24]    Enmon's claim that the Letter Agreement "allowed Prospect to refuse to perform any due diligence whatsoever" (Enmon Br. at 10; <u>see also</u> <u>id.</u> at 9 (asserting "Prospect did not promise to undertake any due diligence")) is contradicted by the plain terms of section 10, expressly obligating Prospect to review at least 50 pages of due diligence materials. (A-625 § 10.)

[25]    In <u>Duff-Gordon</u>, Lady Gordon had unilaterally breached the exclusive agency she had given Wood in a detailed written contract by circumventing Wood, giving out endorsements herself and not sharing the proceeds. 222 N.Y. at 90, 118 N.E. at 214. She then claimed the contract was illusory and not binding because it lacked mutuality and consideration. <u>See</u> <u>id.</u> Like Enmon here, she claimed Wood had agreed to do nothing at all for her, and thus, she was not bound. <u>See</u> <u>id.</u> Judge Cardozo rejected her attempt to renege on her agreement, holding that the contract was binding because there was an <u>implied duty</u> imposed on Wood to "use reasonable efforts," <u>id.</u>, to find endorsements, which was legally sufficient consideration to sustain the contract.

consideration by Prospect:

(1)     to "proceed" with "continuing review" and further substantial due diligence upon execution of the Letter Agreement (A-623-24 §§ 2, 4);

(2)     to hire experts and pay for due diligence expenses (subject to reimbursement by Borrower) (A-624 § 6);

(3)     to supervise these experts and conduct diligence in good faith (A-623 § 2);

(4)     to incur "costs incidental to the closing of the proposed financing, including, but not limited to, fees and disbursements to engineers, accountants, consultants, advisors and legal counsel," with such "substantial costs and expenses including without limitation fees and expenses of counsel and due diligence, transportation, duplication, consultant, search, filing and recording fees" (A-624 § 6);

(5)     to return unused money to Enmon (A-624 § 6);

(6)     to abide by confidentiality requirements (A-624 § 5);

(7)     to abide by the formal amendment process before seeking to assert amendment of the agreement (A-624, 646 §§ 5, 15);

(8)     to attempt to work with the Borrower under the conditions specified in paragraph 12 (id. at § 12); and

(9)     to abide by all surviving "obligations" described in paragraphs 3 through 14 of the Letter Agreement, even after termination of the Letter Agreement. (A-646 § 15.)

Each of these additional elements constitutes a "specific, bargained for legal detriment," further satisfying the New York law definition of "consideration." See Holt, 52 N.Y.2d at 299, 419 N.E.2d at 336, 437 N.Y.S.2d at 658.

## C.     Cases Dealing with Preliminary Agreements are Inapposite

To urge the unenforceability of the Letter Agreement, Enmon mistakenly relies on authorities derived from Judge Leval's seminal decision in

35

Teachers Insurance & Annuity Association v. Tribune Co., 670 F. Supp. 491 (S.D.N.Y. 1987), addressing the enforceability of preliminary binding agreements.[26] See id. at 498-500. These cases are inapposite here because they involved actions seeking recovery for a party's refusal to consummate the final transaction contemplated by a preliminary agreement. This is not the situation here, where both parties agree that there was no obligation to complete the final transaction (e.g., Enmon Br. at 21) but one party seeks to enforce a binding agreement setting forth the precise remedies available if the ultimate transaction were not consummated. See IMMCO, 736 F. Supp. at 795 (noting that an agreement to "consider" a loan proposal in good faith is to be analyzed independently of the principles concerning preliminary agreements). Accordingly, the Teachers line of cases cited by Enmon does not afford a basis for challenging the district court's conclusion that the Letter Agreement was a binding, freestanding agreement. (A-672:19-22.)[27]

---

[26]    See Enmon Br. at 23-29, citing Brown v. Cara, 420 F.3d 148, 157 (2d Cir. 2005); SCS Commun'ns, Inc. v. The Herrick Co., 360 F.3d 329, 340 (2d Cir. 2004); Adjustrite Syst., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547-48 (2d Cir. 1998); Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69 (2d Cir. 1989); Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 408 F.3d 460, 465 (8th Cir. 2005) (applying New York law as embodied in Teachers).

[27]    Even if the case law on preliminary Type II agreements were relevant to the Letter Agreement, it would clearly satisfy all the criteria for a binding agreement on the conditions for Prospect's consideration of a loan under Arcadian Phosphates, (cont'd)

**III.**

**THE DISTRICT COURT CORRECTLY REJECTED ENMON'S CLAIM**
**THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABLE**

**A.    Enmon Concedes the Lack of Procedural Unconscionability**

Enmon's claim that the Arbitration Agreement is unconscionable (Enmon Br. at 32-42) was properly rejected as having "no basis on the record." (A-673:1.)  New York's doctrine of unconscionability[28] requires that a contract be "'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'"  Gillman, 73 N.Y.2d at 10, 534 N.E.2d at 828, 537 N.Y.S.2d at 791 (citation omitted).  See Gill v. World Inspection Network Int'l, Inc., No. 06-CV-3187 (JFB), 2006 WL 216682 (E.D.N.Y. July 31, 2006) ("An unconscionable bargain is one which 'no man in his senses and not under a delusion would make in

---

(cont'd from previous page)

including: (1) the "language of the agreement" which refers to an "agreement" creating immediate and surviving obligations; (2) the context of the negotiations, which involved negotiations on the terms for consideration of a loan where such agreements are "quite common" (A-668-69), see IMMCO, 736 F. Supp. at 587; (3) the lack of any "open terms" in the Letter Agreement, which was complete and integrated; (4) "partial performance" by Enmon who paid the required $25,000 due diligence deposit after signing (A-574) and by Prospect who conducted due diligence and drafted credit documentation (A-819-20); and (5) the plainly final form of the fully executed Letter Agreement.  See Arcadian Phospates, 884 F.2d at 72.

[28]    Whether an arbitration agreement is unconscionable is resolved by applicable state law.  Cap Gemini, 346 F.3d at 364-65.  Enmon concedes that "New York law" applies.  (Enmon Br. at 33.)

one hand, and ... no honest and fair man would accept on the other.'") (citations omitted).

Unconscionability has two essential elements -- procedural and substantive unconscionability:

> A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made -- i.e., "some showing of an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. . . .'"

Gillman, 73 N.Y.2d at 10, 534 N.E.2d at 828, 537 N.Y.S.2d at 791 (emphasis added) (citations omitted); accord, e.g., Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 156 (S.D.N.Y. 2004); Ciago, 295 F. Supp. 2d at 328.

Moreover, Enmon's own authorities recognize that claims of unconscionability in the "commercial setting" will only be "allowed" in "exceptional" cases. See Credit Alliance Corp. v. Joshco Min. Corp., 90 F.R.D. 187, 189 (S.D.N.Y. 1981); see also Am. Dredging Co. v. Plaza Petroleum Inc., 799 F. Supp. 1335, 1339 (E.D.N.Y. 1992) ("there is a presumption of conscionability when the contract is between businessmen in a commercial setting"), vacated in part on other grounds, 845 F. Supp. 91 (S.D.N.Y. 1993).

"Procedural unconscionability" involves the "contract formation process" and requires an assessment of

(1) the size and commercial setting of the transaction; (2) whether

there was a "lack of meaningful choice" by the party claiming unconscionability; (3) the "experience and education of the party claiming unconscionability;" and (4) whether there was "disparity in bargaining power."

Dallas Aerospace., Inc. v. CIS Air Corp., 352 F.3d 775, 787 (2d Cir. 2003) (citing Gillman, 73 N.Y.2d at 10-11).

As below, Enmon fails to identify any basis to find procedural unconscionability. As the district court correctly found, Enmon's conclusory claim that Prospect "abused[]" its "negotiating leverage" (Enmon Br. at 3) "has no basis on the record." (A-672:25-673:3.) Enmon, who is a sophisticated party, does not argue -- because he cannot -- that he was denied a "meaningful choice" in concluding the Letter Agreement or that there existed any overwhelming disparity in bargaining power. (See A-63 ¶ 23 (Enmon admitting that he engaged Prospect "after considering other options" and that Enmon also engaged another potential lender in the transaction; A-919 ¶ 3 (Enmon describing his "talks" with Prospect "regarding a subordinated loan for the transaction").) See JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 170 n.5 (2d Cir. 2004) (no unconscionability where arbitration clause was signed by "sophisticated" party who knew of its terms). In any event, any such assertion is foreclosed by Enmon's express representation that he had "reviewed this agreement with able counsel of [his] own free choosing." (A-624 § 3.) Indeed, the record shows that this was no mere "recital." After all, Enmon's counsel (Fiser) later claimed that Enmon had incurred over $40,000 in

39

legal fees in the course of this transaction. (A-53.)  Accordingly, Enmon fails to

show procedural unconscionability.

**B.    Enmon Fails to Show Substantive Unconscionability**

1.    Because Section 10 Provides for Neutral Adjudication, it
Cannot Be Held to be Substantively Unconscionable

Conceding the absence of procedural unconscionability, Enmon

reliance on dicta in Gillman that, in "'exceptional cases,'" a contract provision may

be "'so outrageous as to warrant holding it unenforceable on the grounds of

substantive unconscionability alone.'" (Enmon Br. at 34 (quoting Gillman, 73

N.Y.2d at 10).)  But Enmon ignores that it is "only in the truly 'exceptional case[]'

that substantive unconscionability alone can vitiate a contractual duty." Dallas

Aerospace, 352 F.3d at 787 (emphasis added) (citing Gillman, 73 N.Y.2d at 10);

see also State v. Wolowitz, 96 A.D.2d 47, 68, 468 N.Y.S.2d 131, 145 (2d Dep't

1983) (exception is reserved for "extreme cases").  This is not that case.

In Ciago, the court rejected a claim that an AAA arbitration clause

was "so outrageous as to invalidate the Agreement on the grounds of substantive

unconscionability alone." See 295 F. Supp. 2d at 329.  The court held that because

the arbitration clause provided for disputes to be resolved in a "neutral forum" (the

AAA in New York), it was not "so shocking as to bring this matter within the

category of the 'exceptional cases' alluded to in Gillman." Id. at 328 (emphasis

40

added).[29]  Here, as in Ciago, the Arbitration Agreement provides for resolution

before a "neutral forum" in all events.   Disputes between the parties must be

resolved either through the AAA or (if Prospect had waived its right to arbitrate) in

the federal or state courts of New York, negating any suggestion of

unconscionability, much less the kind of "shocking" unfairness required to

establish unconscionability in the absence of procedural unconscionability.   Id.

Accordingly, the guarantee of a neutral forum, standing alone, is fatal to Enmon's

unconscionability challenge.  Id.

> ## 2.    Neither the Non-Mutual Arbitration Clause Nor the Hypothetical "Removal Right" (which is Inapplicable) is Unconscionable

Even if Enmon could proceed on a bald claim of substantive

unconscionability, his assertion of substantive unconscionability based solely on

the non-mutual nature of the Arbitration Agreement (Enmon Br. at 35)[30] cannot

possibly satisfy Gillman's requirement of showing "'contract terms which are

---

[29]    To be sure, as the district judge observed in Ciago, the Hooters arbitration clause might have been so egregious as to be unconscionable even absent proof of procedural unconscionability, but the present case is far removed from Hooters.  In that case, the employer, exercising its right to "promulgat[e] arbitration rules and procedures," created a "sham" arbitration system whose rules were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding" and were "crafted to ensure a biased decisionmaker."  See Hooters of Am., Inc. v. Phillips, 173 F.3d 993, 938 (4th Cir. 1999).  No such allegation has been, or could be, made here.

[30]    Enmon concedes he cannot challenge the entire Letter Agreement as unconscionable.  (Enmon Br. at 35 n.6.)

unreasonably favorable to the other party.'"  73 N.Y.2d at 10, 534 N.E.2d at 828,

537 N.Y.S.2d at 791.   Under Sablosky, a non-mutual arbitration clause, granting

one side the option to litigate rather than arbitrate, is "not unreasonable as a matter

of law" and, a fortiori, cannot be unconscionable.   73 N.Y.2d at 138-39, 535

N.E.2d at 647, 538 N.Y.S.2d at 517 (emphasis added). [31]   Despite Enmon's

assertion that Prospect's hypothetical right to "remove" arbitral claims to a New

York court renders Sablosky "not dispositive" (Enmon Br. at 36 n.7), both the facts

and the holding in Sablosky are on all fours with the present case.  In Sablosky, the

---

[31]    Because New York law, as stated in Sablosky, forecloses any claim of substantive unconscionabilty here, Enmon's inapposite out-of-state cases (Enmon Br. at 35-36) are irrelevant. Three did not even involve an arbitration clause giving one party the right to litigate.  See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1075-76 (9th Cir. 2007) (applying California law; addressing unfairness of clause that shortened the time period for bringing claims against employer and contained onerous confidentiality agreement); Iwen v. U.S. W. Direct, 977 P.2d 989, 996 (Mont. 1999) (applying Montana law; addressing a "standard form contract" of adhesion that required arbitration); Geoffroy v. Washington Mut. Bank, No. 06 CV 1732 BEN (WMC), 2007 WL 1334375, at *4 (S.D. Cal. May 3, 2007) (contract that permitted unilateral amendment to the arbitration agreement).  The remainder are consumer "contracts of adhesion" cases, where procedural unconscionability was demonstrated.  See Wisconsin Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155 (Wis. 2006) (consumer challenged one-way arbitration clause appearing in contract of adhesion); Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004) (same); Williams v. Aetna Fin. Co., 700 N.E.2d 859, 866 (Ohio 1998) (same); Arnold v. United Cos. Lending Corp., 511 S.E.2d 854, 862-63 (W. Va. 1998) (same).  And one, Lytle v. CitiFinancial Services, 810 A.2d 643, 665 (Pa. Super. Ct. 2002) (same), has been overruled. See Salley v. Option One Mgr. Corp., No. 50 EAP 2005, 2007 Pa. LEXIS 1195 at *36-42 (Pa. May 31, 2007) (holding non-mutual arbitration clause permitting one party to have recourse to the courts is not per se unconscionable).

42

employer reserved the right, after commencement of the litigation, to transfer claims to one of two arbitral bodies of its choice. 73 N.Y.2d at 135, 535 N.E.2d at 645, 538 N.Y.S.2d at 515. The employee had neither the right to trump the employer's choice of arbitration, nor the ability to choose the arbitral forum. Id. Here, in similar fashion, Section 10 gives Prospect the right to "waive" arbitration and pursue litigation against Enmon, and, as part of that right, to "remove" actions from arbitration. Prospect's right of removal is thus merely another form of non-mutual remedy which would be enforceable under Sablosky.

Even were Sablosky not dispositive, Enmon still could not avoid the written arbitration agreement by challenging the removal right. As a matter of law, the possibility that the arbitration agreement contains an objectionable procedure does not provide a ground for challenging arbitrability. Rather, any questions concerning procedures related to the arbitration agreement, such as the power to subsequently remove claims from arbitration, are committed to the arbitral tribunal for determination. See Green Tree, 539 U.S. at 452 (court's review of arbitration agreement is "limited [to] certain gateway matters, such as whether the parties have a valid arbitration agreement at all") (citations omitted). Once the Court finds there is an agreement to arbitrate, secondary issues concerning "the validity and meaning of specific provisions within the [arbitration] agreement [are] a matter for the arbitrator to decide." Ciago, 295 F. Supp. 2d at 330 (citing Howsam, 537 U.S.

43

at 84).   The procedural issues for the arbitrator include claims that specific provisions of an arbitration agreement are unconscionable.   In <u>Ciago</u>, the court rejected an unconscionability challenge based on allegedly unconscionable notice and fee provisions in the arbitration agreement, holding that such matters fell within the province of the arbitrator.   <u>See id.</u>; <u>see also</u> <u>Tarulli</u>, 333 F. Supp at 158 (declining to consider whether "any particular provisions" of a binding arbitration clause are unconscionable, having already decided gateway issue of arbitrability).[32] Likewise here, even if Enmon's concerns about removal (which has not been invoked) were genuine, these hypothetical procedural issues can and should be decided by the arbitrator, and cannot be invoked as a basis to override the agreement to arbitrate.   Standing alone, this precludes any challenge to the clause based on the removal right, whose validity and application are for the arbitrator to decide.

Even if this procedural issue were for the Court, as the district court correctly held, the "removal" right has no application here.   Under section 10,

---

[32]    <u>Davis v. ECPI College of Tech., L.C.</u>, No. 05-2122, 2007 WL 840506, at *2 (4th Cir. Mar. 20, 2007) (unconscionability challenge to collective action waiver was question about type of arbitration proceedings for arbitrator, not gateway issue of arbitrability for court); <u>Gill,</u> 2006 WL 2166821, at *4 (unconscionability challenge to arbitral forum was matter for arbitrator); <u>Baldeo v. Darden Restaurants, Inc.</u>, No. 04-CV-2185(JG), 2005 WL 44703, at *7 (E.D.N.Y. Jan. 11, 2005) (employee free to argue unconscionability of specific provisions of arbitration agreement before arbitrator).

Prospect has a one-time right to "waive" arbitration and elect litigation, exercisable in one of two ways: <u>affirmatively,</u> by Prospect commencing litigation as plaintiff, or <u>defensively,</u> <u>i.e.</u>, in the event Prospect is sued in arbitration as a respondent. On its face, the right to "remove" claims, embodied within section 10, adopts the federal concept of "removal," a right solely conferred upon the <u>defendant</u>.[33] Thus, applying section 10's plain meaning, because "remov[al]" is a procedure solely exercisable by the <u>respondent</u> in arbitration, it could not possibly be invoked here by <u>Prospect</u>, as "Claimant." And although, as Enmon notes, the removal right might arise "at any time" and might apply to any "claim" (Enmon Br. at 37) these words merely relate to the timing and scope of the removal right, once applicable. They do not change the plain meaning of the word "remove," which is a concept solely applicable to a defendant/respondent. Thus, when Prospect <u>affirmatively</u> invoked arbitration <u>as Claimant</u> for "any and all disputes between the parties" (<u>see</u> A-76), section 10's right of removal was rendered inapplicable. Enmon's contrary interpretation of section 10 as giving Prospect the right to remove claims that

---

[33]    <u>See</u> 28 U.S.C. §§ 1441-42, 1446; <u>Hamilton v. Aetna Life & Cas. Co.</u>, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) ("Several sections [of Title 28] permit removal by defendants . . . . <u>No section provides for removal by a plaintiff.</u>") (emphasis added) (citation omitted); 14C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 3731 (3d ed. 1998) ("Section 1446(a) of Title 28 authorizes removal only by the state court defendants . . . . <u>Thus, the plaintiffs cannot remove.</u>") (footnotes omitted) (emphasis added).

45

"Prospect itself filed" (Enmon Br. at 39) simply "strain[s] the language of the [Letter Agreement]," to quote the district court. (A-669:16-19.)[34] Moreover, any doubt that the removal right must be construed in this manner -- as opposed to the broad construction placed upon it by Enmon -- "should be resolved in favor of arbitration," thus mandating a narrow interpretation of the removal right. <u>See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

Moreover, as the Court has noted, Prospect has expressly and unequivocally abjured any right of removal in this case and "<u>agreed that it will submit all issues to the arbitration before the American Arbitration Association</u>." (A-673:8-10 (emphasis added); <u>see also</u> A-644:14-18 (Prospect representing that it had waived any right to opt out of arbitration).) Under the doctrine of judicial estoppel, these unequivocal representations are binding on Prospect and would preclude any future attempt to remove the action from arbitration. <u>See Bates v. Long Island R.R.</u>, 997 F.2d 1028, 1037 (2d Cir. 1993) (judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a

---

[34]    <u>See also Empire Props. Corp. v. Mfrs. Trust Co.</u>, 288 N.Y. 242, 248 43 N.E.2d 25, 28 (1942) ("The meaning of a writing may be distorted where undue force is given to single words or phrases. We read the writing as a whole. We seek to give to each clause its intended purpose in the promotion of the primary and dominant purpose of the contract."); <u>G&B Photography, Inc. v. Greenberg</u>, 209 A.D.2d 579, 581, 619 N.Y.S.2d 294, 296 (2d Dep't 1994) (courts reject arguments where defendants attempt to "create an irrational conflict between two provisions that can reasonably be reconciled").

position previously taken by [that party] in a prior legal proceeding").  Accordingly,

even if there were merit to Enmon's contention that Section 10's "literal terms"

warrant a different interpretation of the removal right (Enmon Br. at 40), any such

concerns are now mooted by the doctrine of judicial estoppel.

Although Enmon claims that Prospect's "disavowal" of the removal

right cannot "save the arbitration clause from being unenforceable" (Enmon Br. at

40), he fails to cite a single case invalidating an arbitration agreement based on a

purely speculative concern that has no basis in reality.[35]  Indeed, controlling

authority establishes that mere speculation about potential contingencies will not

override the strong federal policy favoring enforcement of arbitration agreements.[36]

---

[35]    The cases Enmon cites for this proposition (Enmon Br. at 40), are inapposite
on their face because in those cases, it was found that the employers who reserved
the right to revise, supplement or rescind the arbitration agreements in their sole
"discretion" never created any binding agreement -- thus, counsel's subsequent
representations could not cure the original illusory nature of the arbitration
agreement.  Cheek, 835 A.2d at 662 n.5; Phox v. Atriums Mgmt. Co., 230 F. Supp.
2d 1279, 1283 (D. Kan. 2002).  Here, by contrast, Enmon cannot claim that the
original agreement to arbitrate was illusory.  In all events, these cases reflect the
minority non-New York view that non-mutual arbitration clauses are
unenforceable.  (See supra n. 23.)

[36]    See, e.g., Stuart, 85 F.3d at 983 (2d Cir. 1999) (rejecting franchisee's claim
that arbitration was unconscionable because it failed to disclose the future
possibility that a franchisor's affiliate might engage in coercive litigation tactics
against it, because, in actuality, no such lawsuit had been "brought or threatened"
against the franchisee); PacifiCare Health Sys. Inc. v. Book, 538 U.S. 401, 405
(2003) (speculation about how arbitrators might construe "remedies" clause was
insufficient basis to resist arbitration); Green Tree Fin. Corp. v. Randolph, 531 U.S.
(cont'd)

Because an arbitration clause cannot be held to be substantively unconscionable based on hypothetical contingencies that have not arisen (and never could arise), Enmon's challenge to the removal right is moot.

3.    Even if Not Mooted, Prospect's Hypothetical
      "Removal" Right is Not Unconscionable

Even if the removal right were still exercisable, it could not possibly make the Arbitration Agreement so "one-sided" as to support a claim of unconscionability.    As demonstrated above, the fundamental requirement of fairness in arbitration -- a neutral forum -- is satisfied whether the case is litigated in court or arbitrated before the AAA, thus negating any claim of unconscionability. See Ciago, 295 F. Supp. 2d at 30 (noting that an arbitration agreement providing for a neutral forum is not unconscionable).    Thus, although the exercise of the removal right might affect the forum in which claims are prosecuted, it would not (and could not) affect the extent of the substantive remedies or discovery rights

---

(cont'd from previous page)

79, 90-91 (2002) (rejecting as "too speculative" plaintiff's claim that she would be deterred from pursuing statutory claims in arbitration because of requirement that losing party bear costs of arbitration; noting that "the record did not show that [plaintiff] will bear such costs if she goes to arbitration"); Vimar Seguros y Reaseguros S.A. v. M/V Sky Reefer, 515 U.S. 528, 540-41 (1995) ("mere speculation that the foreign arbitrators might apply Japanese law" did not provide an adequate basis upon which to declare the relevant arbitration agreement unenforceable).

available to the parties.[37]

Moreover, if the removal right were exercised, this would represent a change in forum, but would not nullify the prior arbitral proceedings or constitute a "bail out," as Enmon erroneously claims. There is no reason to suggest the court would not inherit all of the arbitration proceeding's prior rulings, discovery and evidence -- just as when state proceedings are removed to federal court. See, e.g., 28 U.S.C. § 1450; Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 435-36 (1974) (noting that, upon removal, "proceedings had in state court shall have force and effect in federal court," and that "interlocutory orders entered by the state court . . . will not lapse upon removal").[38] Enmon's claim that Prospect could force Enmon to "relitigate" his claims in court (Enmon Br. at 38) is thus wholly misconceived.

Finally, Enmon contends that the removal provision is "contrary to the

---

[37]    The cases dealing with one-sided rights cited by Enmon (Enmon Br. at 38) are all clearly distinguishable. See Simpson v. MSA of Myrtle Beach, Inc., No. 26293, 2007 S.C. LEXIS 125, at *22 (S.C., Mar. 26, 2007) (unfairness arose in consumer contract that granted car dealer the right to enforce judicial rights even when consumer's arbitration claim was pending); Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 784-85 (9th Cir. 2002) (employer granted "one-sided" discovery rights).

[38]    Enmon no longer postulates his fanciful theory, advanced below, that the removal right might be exercised after an adverse award was rendered. (A-664:25-666:13.) Accordingly, he does he challenge the Court's holding that "Prospect would not have a right to remove after arbitration and after an adverse decision by the arbitrator." (A-673:14-16.)

policies that justify judicial enforcement of arbitration clauses." (Enmon Br. at 38-39.) Yet, as the very case cited by Enmon indicates, an arbitration clause is not presumed void as against public policy "'if . . . it [is] consistent with the laws and valid.'" Larrison v. Scarola Reavis & Parent LLP, 11 Misc.3d 572, 579, 812 N.Y.S.2d 243, 248 (Sup. Ct. New York County 2005). Because section 10 is permissible and valid (see supra § II), the district court was correct to hold that it does not violate public policy, much less overcome the strong federal policy favoring arbitration. (A-675:11-13.) Accordingly, because section 10's removal right, even if exercisable, preserves access to a neutral forum, Enmon's claims of unconscionability must fail.

### C.    Enmon's Claim that the Letter Agreement as a Whole is Unconscionable is Improper

Although initially proclaiming that he "challenges only the unconscionability of [the Arbitration Agreement]" and that he "is not asserting" that the contract "as a whole" is unconscionable (Enmon Br. at 35 n.6), Enmon later tries to have it both ways by claiming that "the court could look at the contract as a whole to determine the enforceabilty of the arbitration clause." (Id. at 41 n.8 (citing Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th Cir. 2006).) On the contrary, Nagrampa repeatedly stresses the Prima Paint rule that only the arbitration clause may be examined in determining the unconscionability of the arbitration clause. See id. at 1270; see also JLM Indus., 387 F.3d at 170 ("'Claims

of unconscionability'" are "'included within the <u>Prima Paint</u> rule.'") (citation omitted). To the extent that <u>Nagramapa</u> undertook "an examination of the making of the entire contract," <u>see</u> 469 F.3d at 1271, it did so only in examining whether the contract was a procedurally unconscionable contract of adhesion, <u>see</u> <u>id.</u> at 1282-85,[39] a contention that is not and could not be made here. Enmon's attempt to portray the "overall proposal" embodied in the Term Sheet as unconscionable (Enmon Br. at 41-42) is therefore an impermissible attempt to circumvent <u>Prima Paint</u>.

\* \* \*

In the final analysis, Enmon, advised by counsel, knowingly entered into a written agreement with Prospect establishing the conditions for Prospect's consideration of Enmon's loan request and providing that any disputes would be settled through arbitration, not litigation. Accordingly, because Enmon is bound

---

[39]    The other cases cited by Enmon (Enmon Br. at 41) either addressed procedural unconscionability, <u>see</u> <u>David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)</u>, 923 F.2d 245, 249 (2d Cir. 1991) (alleged contract of adhesion); <u>Jenkins v. First Am. Cash Advance of Ga., LLC</u>, 400 F.3d 868, 876-77 (11th Cir. 2005) (same), <u>cert. denied</u>, 126 S. Ct. 1457 (2006); <u>Madol v. Dan Nelson Auto. Group</u>, 372 F.3d 997, 999 (8th Cir. 2004) (same); <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 264-66 (3d Cir. 2003) (same); <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 16 (1st Cir. 1999) (same), or did not address unconscionability at all, <u>see</u> <u>Wash. Mut. Fin. Group, LLC v. Bailey</u>, 364 F.3d 260, 266 n.4 (5th Cir. 2004) (alleged fraudulent inducement); <u>Burden v. Check into Cash of Kentucky, LLC</u>, 267 F.3d 483, 491-92 (6th Cir. 2001) (same). All are therefore inapposite.

51

by a "written provision . . . in a contract" to "settle by arbitration" all disputes

between the parties for purposes of section 2 of the FAA, the district court had the

authority -- indeed the obligation[40] -- to issue an order compelling arbitration by

reason of Enmon's express acceptance of the Arbitration Agreement. See 9 U.S.C.

§ 4.

## IV.
## THE DISTRICT COURT CORRECTLY ENJOINED THE TEXAS ACTION

Enmon concedes, as he must, that section 3 of the FAA "authorizes a

court to enjoin a party from litigating his claims in court if the party is bound to a

valid arbitration agreement." (Enmon Br. at 48.)[41]  Because, as demonstrated

above, there is no merit to Enmon's challenge to the Arbitration Agreement (see

supra §§ I-III), the district court's injunction was incontestably appropriate. See,

---

[40]    The FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 815, 844 (2d Cir. 1987) (emphasis added) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

[41]    The district court's power to enjoin the Texas Action is also supported by the Anti-Injunction Act, permitting a district court to stay litigation in a state court, where, as here, it is "expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect and effectuate its judgments."  28 U.S.C. § 2283.  "The courts in this district have consistently held that a stay, when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state court proceeding, falls within one or both of the latter two exceptions" to 28 U.S.C. § 2283.  In re Nuclear Electr. Ins. & Centr. Power & Light Co., 926 F. Supp. 428, 436 (S.D.N.Y. 1996).

e.g., <u>Hamilton</u>, 150 F.3d at 164 (affirming order compelling arbitration and

enjoining state court litigation initiated in violation of arbitration agreement);

<u>Pervel Indus., Inc. v. T.M. Wallcovering, Inc.</u>, 871 F.2d 7, 9 (2d Cir. 1989) (same).

## **CONCLUSION**

For the foregoing reasons, the decision below should be affirmed in

all respects.

Dated: June 22, 2007
      New York, New York

                      Respectfully submitted,

                      SKADDEN, ARPS, SLATE,
                        MEAGHER & FLOM LLP

                      By: <u>/s/ Timothy G. Nelson</u>

                      Jonathan J. Lerner
                      Maura Barry Grinalds
                      Timothy G. Nelson
                      Four Times Square
                      New York, New York 10036

             Attorneys for Petitioners-Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Timothy Graham Nelson, counsel for Petitioners-Appellees, hereby certify that the foregoing brief complies with the type-volume limitations set forth in Rule 32(a)(7) of the Federal Rules of Appellate Procedure.  The total number of words in the foregoing brief is 13,738 words.

Dated: June 22, 2007
       New York, New York

<u>/s/ Timothy G. Nelson</u>

Timothy G. Nelson

STATE OF NEW YORK      )                          **AFFIDAVIT OF SERVICE**
                       )        ss.:              **BY OVERNIGHT FEDERAL**
COUNTY OF NEW YORK     )                          **EXPRESS NEXT DAY AIR**


       I,                    , being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at


      **On June 22, 2007**


deponent served the within:  **Brief for Petitioners-Appellees**


     **upon:**


          **SEE ATTACHED SERVICE LIST**


the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a properly addressed wrapper in an Overnight Next Day Air Federal Express Official Depository, under the exclusive custody and care of Federal Express, within the State of New York.  Attorneys have been served electronically via e-mail.


**Sworn to before me on June 22, 2007**


    **ROBIN M. ZUCKERMAN**
    Notary Public State of New York
      No. 01ZU5007194
    Qualified in Orange County
Commission Expires Jan. 25, 2011      **Job # 209392**

**SERVICE LIST**

Kurt B. Arnold
Jason A. Itkin
Caj D. Boatright
Arnold & Itkin, L.L.P.
1401 McKinney, Suite 2550
Houston, Texas 77010
(713) 222-3800
karnold@arnolditkin.com
jitkin@arnolditkin.com
cboatright@arnolditkin.com


Gregory S. Coleman
Marc S. Tabolsky
Yetter & Warden, L.L.P.
221 West 6th Street, Suite 750
Austin, Texas 78701
(512) 533-0150
gcoleman@yetterwarden.com
mtabolsky@yetterwarden.com

EXHIBIT 6

# ARNOLD & ITKIN LLP

A REGISTERED LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
1401 MCKINNEY STREET, STE. 2550
HOUSTON, TEXAS 77010
(713) 222-3800
(713) 222-3850(FAX)
www.arnolditkin.com

May 23, 2007

***Via Federal Express and Email***

Ms. Maura Barry Grinalds
Mr. Jonathan J. Lerner
**Skadden Arps Slate Meagher & Flom**
Four Time Square
New York, NY 10036
Fax: 917.777.2550

Jennifer Metz
Case Manager
**American Arbitration Association**
Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914

Re: 13 148 02866 06
Prospect Energy Corporation / Bart De Bie / John Barry /M. Eliasek / Walter Parker /
Prospect Capital Management LLC v. Michael Enmon

Dear Counsel,

Enclosed is *Michael Enmon's Opposed Motion for Continuance* in the above referenced matter.

Sincerely,

Amber Fraser
*Legal Secretary*

CC:    Mr. John H. Wilkinson, Esq.

American Arbitration Association Claim Confirmation Number: 002-Q5B-VMY

| | |
|---|---|
| Prospect Energy Corporation, | § |
| Prospect Capital Management LLC, | § |
| Bart De Bie, John Barry, and | § |
| M. Grier Eliasek, Walter Parker | § |
| | § |
| Claimants. | § |
| vs. | § |
| | § |
| Michael Enmon | § |
| | § |
| Respondent. | § |

## OPPOSED MOTION FOR CONTINUANCE

Mike Enmon files this Motion for Continuance, and respectfully asks the Arbitrator to continue this arbitration for at least sixty (60) days to ensure that Enmon has adequate time to conduct discovery and prepare for the proceeding currently scheduled for July 23-27, 2007. As set forth below, counsel for Enmon's trial schedule in May, June, and July prohibits adequate preparation for this important arbitration.

This arbitration proceeding is currently scheduled for argument on July 23-27, 2007, commencing at 10:00 a.m. There are several important deadlines set prior to that date. For instance, expert designations are due May 31, 2007. In addition, both parties will have to spend a fairly considerable amount of time preparing for the hearings. Unfortunately, counsel for Enmon has a trial schedule between now and the arbitration that will make it almost impossible to adequately prepare the case.

Just yesterday, counsel for Enmon gave closing arguments in a commercial case pending in Hawaii. The trial of that case lasted five weeks. Thus, counsel for Enmon and two of its paralegals (all of whom are involved in the instant matter) have been in Hawaii continuously for over six weeks, and are not scheduled to be back in Texas until this weekend.

Counsel for Enmon is preferentially set to start trial in a railroad crossing death case in Jefferson County, Texas on June 4, 2007. That trial is expected to last approximately four weeks. During that time, counsel for Enmon will also have a trial in Galveston, beginning June 11, 2007, on a Jones Act case. On the heels of the crossing death trial, counsel for Enmon has one trial in Seattle and another in Galveston, both beginning on July 9, 2007. The following week of July 16, counsel for Enmon is set for two more trials in the Southern District of Texas. On July 23, 2007, counsel for Enmon has yet another trial in Galveston.

Enmon is mindful and respectful of the fact that most lawyers in today's world have busy schedules. And it is only in light of the multiple trial settings between now and the arbitration proceeding that Enmon respectfully asks for this continuance. Enmon assures the Arbitrator that good faith underlies this request, and that the motion is filed out of necessity.

Counsel for Enmon is available for a telephone conference regarding this issue if the Arbitrator desires one.

Respectfully submitted,

ARNOLD & ITKIN LLP

Jason A. Itkin
Texas State Bar No. 24032461
Stephen R. Foster
Texas State Bar No. 24027314
Caj D. Boatright
Texas State Bar No. 24036237
5 Houston Center
1401 McKinney Street, Suite 2550
Houston, Texas 77010
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**ATTORNEYS FOR DEFENDANT AND COUNTER- CLAIMANT MIKE ENMON**

## CERTIFICATE OF CONFERENCE

The undersigned contacted counsel for Prospect on May 1, 2007, regarding postponement of the arbitration hearings. On May 7, 2007, counsel for Prospect indicated that they were opposed to the continuance. Thus, the motion is presented to the Arbitrator for adjudication.

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument was served under AAA guidelines, via electronic mail and facsimile on May 23, 2007, upon the following counsel of record:

John H. Wilkinson, Esq.
Of Counsel
c/o John H. Wilkinson
**Fulton, Rowe, Hart & Coon**
One Rockefeller Plaza, Suite 301
New York, NY 10020-2002
fax # 212-245-1863
*Arbitrator*

Maura Barry Grinalds
Timothy G. Nelson
**Skadden Arps Slate Meagher & Flom**
Four Time Square
New York, NY 10036
*Counsel for Petitioners*

Jennifer Metz
Case Manager
**American Arbitration Association**
Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914
*Case Manager for AAA*

Caj D. Boatright

EXHIBIT 7

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(212) 735-7808
DIRECT FAX
(917) 777-7808
EMAIL ADDRESS
MGRINALD@SKADDEN.COM

May 24, 2007

BY FACSIMILE

Mr. John H. Wilkinson, Esq.
Fulton, Rowe, Hart & Coon
One Rockefeller Plaza, Suite 301
New York, NY 10020-2002

Re:        AAA Arbitration 13 148 02866 06
           *Prospect Energy Corporation et al and Michael Enmon*

Dear Mr. Wilkinson:

We write in response to Respondent Michael Enmon's Motion for Continuance, filed on May 23, 2007. For several separate reasons, Claimants are constrained to object to Respondent's belated motion for a continuance of "at least sixty (60) days" and respectfully submit that the grant of any continuance would significantly prejudice Claimants who have undertaken to comply with your scheduling order.

At the initial scheduling conference on February 15, 2007, you presided over the negotiation of a detailed pre-hearing schedule, during which Enmon's counsel was free to identify any scheduling constraints or conflicts he had. Rather than do so – because presumably any such "conflicts" arose after agreeing to the schedule ordered by you – Mr. Itkin requested that the parties set aside a full two weeks in July for the hearing of this matter, even though Claimants believed only one day was necessary to hear this case. You granted one week of contiguous hearing dates, explaining that once agreed – as they were – those dates were "set in stone." This schedule was memorialized in a Scheduling Order dated February 20, 2007. Based on this mutually agreed-upon schedule, we have planned accordingly and have advised Claimants and other witnesses to set aside the designated hearing dates. Any change at this late date would impose hardship on these parties and witnesses and severely prejudice Claimants.

Mr. John H. Wilkinson, Esq.
May 24, 2007
Page 2

   For the next few months following the scheduling conference, Enmon's counsel made no suggestion that he could not comply with this agreed-upon schedule.[1] Then suddenly on May 1, on the eve of a conference call related to Respondent's appeal to the Second Circuit Court of Appeals of Judge Sand's decision compelling Enmon to arbitrate, Enmon's counsel indicated vaguely for the first time that Respondent "will probably be looking to put the arbitration off until the early fall." (See Ex. A) Even though no formal request for an adjournment had been made, to eliminate any doubt, on May 7, 2007, Claimants advised Enmon's counsel that they were unable to accede to his request because "the dates in this arbitration were carefully negotiated between the parties and Mr. Wilkinson, and Mr. Wilkinson indicated that the dates were set in stone. We planned accordingly and advised our client and other witnesses to set aside those dates. Therefore, we would suffer serious prejudice if the hearing dates were postponed." (See id.)

   On May 2, the parties participated in a conference call before the Staff Attorney for the Second Circuit Court of Appeals. During the call, the Staff Attorney advised Respondent that the Court of Appeals is unlikely to hear argument on, much less rule upon, Enmon's appeal until after the conclusion of this arbitration. The following week, on May 14, 2007, at another conference before the Staff Attorney, Enmon's appellate counsel proposed that Claimants simply agree to stay the arbitration pending Enmon's appeal to the Second Circuit. Claimants declined. It is therefore no small coincidence that on May 23, 2007, the very same day respondent filed its brief in the Second Circuit challenging Judge Sand's decision compelling arbitration, Respondent filed his motion seeking a continuance.

   It is clear that Respondent's motion is really an attempt to gain a procedural advantage by delaying this arbitration until the Second Circuit appeal is determined, relief Respondent could have and should have sought from the District Court, but did not. Having knowingly declined to seek an interim stay from the District Court, and having agreed to a strict prehearing schedule, Respondent should not now be heard to complain. In the final analysis, Respondent's motion is just another attempt to frustrate Claimants' contractual right to a speedy and efficient resolution of the parties' disputes through arbitration.

---

[1] Indeed, as you may recall, Enmon's counsel refused to consent to a one week extension of Claimants' time to file an answering statement, even though Claimants were proposing to file a week earlier than required under the AAA Rules and even though it would not have affected any of the other dates in the schedule. As a result of Enmon's insistence of the scheduling order, Claimants were compelled to make a special application to you for this relief.

Mr. John H. Wilkinson, Esq.
May 24, 2007
Page 3

Enmon's counsel also fails to offer any compelling reasons for the extraordinary relief he seeks. People v. Arroyave, 49 N.Y.2d 264, 272 (N.Y., 1980) ("it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic.") The suggestion that Enmon lacks sufficient legal resources to comply with the prehearing schedule he agreed to is belied by the facts. When Respondent deems it necessary, he appears to have a stable of lawyers ready to represent him. Indeed, in addition to the lawfirm of Arnold & Itkin, Enmon retained Quinn Emanuel for the proceedings in the District Court for the Southern District of New York and has also retained the law firm of Yetter & Warden for his appeal to the Second Circuit Court of Appeals.

Based on the significant prejudice to Claimants that would result from any continuance, as well as the tactical nature of Respondent's belated request, we respectfully submit that Respondent's latest attempt to scuttle the arbitration should be denied.

Respectfully submitted,

Maura Barry Grinalds

cc:    Jason Itkin (by email)
       Robert Zanni (by email)

# EXHIBIT A

**From:**        Friedman, Elliot
**To:**           'Caj Boatright'; Jason Itkin
**Subject:**     RE: Conference Call
**Date:**        5/7/2007 4:55:06 PM
**CC:**          Grinalds, Maura Barry
**BCC:**

**Message:**

Caj

In response to your request for our consent to a postponement of the arbitration hearing dates, we consulted with our client and report that we are unable to accede to your request.

As you know, the dates in this arbitration were carefully negotiated between the parties and Mr. Wilkinson, and Mr. Wilkinson indicated that the dates were set in stone.  We planned accordingly and advised our client and other witnesses to set aside those dates.  Therefore, we would suffer serious prejudice if the hearing dates were postponed.

Elliot

―――――

From: Caj Boatright [mailto:cboatright@arnolditkin.com]
Sent: Tuesday, May 01, 2007 10:42 PM
To: Grinalds, Maura Barry; Friedman, Elliot
Cc: Kurt Arnold; Jason Itkin; Amber Fraser; Elsa Cavazos; Stephen Foster
Subject: Conference Call

Maura:

I got you message yesterday.  I was in mediation and will be in court all day tomorrow.  We will be initiating the conference call tomorrow.  Stephen Foster from my office will be on the call.  He knows the issues and has full authority.

On another note, we will be asking for a continuance in the Enmon arbitration.  We have a large commercial trial right now that will not conclude until the end of May.  We then start a railroad crossing death trial in June that will last several weeks.  We will probably looking to put the arbitration off until the early fall.  Please let me or Jason know if you oppose moving the proceeding.

Thanks,

Caj

Caj D. Boatright

Arnold & Itkin LLP

EXHIBIT 8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-7808
DIRECT FAX
(917) 777-7808
EMAIL ADDRESS
MGRINALD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
─────
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
─────
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 19, 2007

BY FACSIMILE & EMAIL

John H. Wilkinson, Esq.
Fulton, Rowe, Hart & Coon
One Rockefeller Plaza, Suite 301
New York, NY 10020-2002

> Re:    AAA Arbitration 13 148 02866 06
>        *Prospect Energy Corp. et al v. Michael Enmon*

Dear Mr. Wilkinson:

On behalf of Claimants, we write to request a telephonic conference at your earliest convenience today or tomorrow, to clarify the procedures to be followed in the arbitration hearing set to occur from Monday, July 23, 2007 to Friday, July 27, 2007.

Respondent's recent actions -- and studied unresponsiveness to our attempts to confer on logistics and witnesses[1] -- have caused us to make this application because they suggest that, now that all of Enmon's efforts to derail this arbitration by staying it have failed,[2] Respondent appears bent on disrupting it from within, in an apparent effort to sow chaos and confusion to jeopardize the completion of these proceedings in the time allotted and to frustrate your ability to render a binding award promptly thereafter. In particular, Respondent's counsel has engaged in a series of potentially disruptive tactics concerning (1) the order of witnesses, (2) the production of third party documents, (3) expert discovery and (4) the marking of exhibits. Combined,

---

[1]    We have made numerous calls to Mr. Itkin to discuss logistics and witnesses, which have simply been ignored.

[2]    As you know, since the prehearing conference on Wednesday May 11, 2007, Respondent has resorted to a series of last ditch actions in federal court to derail the proceeding. Yesterday, Judge Sand denied Respondent's application to modify his prior order compelling this arbitration. See Ex. A.

John H. Wilkinson, Esq.
July 19, 2007
Page 2

these tactics can only be construed as calculated to disrupt orderly and fair procedure. We respectfully submit that a conference is imperative to establish order, fairness and predictability in the presentation of witnesses and evidence to ensure that the arbitration proceeding is completed pursuant to the schedule in your February 20, 2007 Procedural Order.

## Planned Ambush by Surprise Witnesses

Last week, Respondent identified a list of 12 witnesses, 8 of whom are third parties or persons who had no prior known connection to this matter. In attempting, without success, to determine what some of Respondent's surprise witnesses intended to testify about, we learned that two of them had been asked by Mr. Itkin to appear on the first day of hearing, on Monday, July 23, 2007. We do not know how many other witnesses Respondent intends to introduce on the first day.

However, it is well settled that Claimants present their case first, and counsel for Respondent has never made any application to this tribunal to realign the parties. Accordingly, Mr. Itkin had no basis for simply presuming that Respondent's witnesses would go first. Nor did he ever make any request for us to accommodate a special schedule of out of state witnesses. Instead, as part of his apparent continued agenda to disrupt the proceedings and convert it into a circus, Mr. Itkin apparently intends to spring these surprise witnesses at the beginning the hearing, which will only engender disorder. It is also extremely prejudicial to Claimants, who have relied on their priority in scheduling their witnesses, who are extremely busy senior executives of a public company and an out of state witness, to testify during the first three days. As busy executives, they are entitled to know, with as much certainty as possible, when they are going to be called to testify.

Accordingly, Claimants respectfully request that the following procedures be embodied in a procedural order of the tribunal (see proposed order, attached):

(a)     Pursuant to the alignment of the parties and in the interests of a fair and orderly hearing, Claimants' entire case in chief be heard first, followed by Respondent's entire case in chief.

(b)     Any application by either party to interpose witnesses out of the above order shall be made or at least two day's notice.

(c)     Only parties to this arbitration proceeding are permitted to be present during the hearing.

John H. Wilkinson, Esq.
July 19, 2007
Page 3

Pursuant to the tribunal's February 20, 2007 Procedural Order, which requires at least 24 hours -- and if possible three days -- notice of the order of a party's witnesses, Claimants hereby give notice that they presently intend to present their case in chief in the following order: [3]

1.    Mr. John F. Barry, III
2.    Mr. Bart de Bie
3.    Mr. Grier Eliasek
4.    Mr. Jeffrey Munoz

Depending on the length of cross-examination, we estimate that the presentation of Claimants' evidence may take two to two and a half days.

Claimants request that Respondent be required, in accordance with the February 20, 2007 procedural order, to provide his proposed order of witnesses with similar advance notice.

**Potential Ambush with Surprise Documents**

At the July 12 pre-hearing conference, Mr. Itkin stated that he had not received any documents from third party witnesses that had not already been produced, and undertook to provide immediately to Claimants any third documents later obtained. Claimants have received no third party documents subsequent to the pre-trial conference. However, based on the brief and fruitless conversations with some of Respondent's new third party witnesses, Claimants understand that relevant documents may exist which may be disclosed for the first time at the hearing. The obvious unfairness of this ambush tactic is further compounded by the fact that Respondent alone has unfettered access to these witnesses and knows the nature of their testimony.

Indeed, if Mr. Itkin has not received these third party documents by now, it can only be that he has consciously avoided obtaining possession of them in order to evade his disclosure obligations. Accordingly, Claimants respectfully request that as a matter of basic fairness, Respondent be precluded from introducing or referring to any such third party documents during the proceedings.

Furthermore, Respondent has not indicated what the third party witnesses will testify about at the hearing. Accordingly, in order to prevent unfair surprise, Claimants respectfully request that Respondent be ordered to provide Claimants with a brief proffer of expected testimony from such witnesses at least 24 hours prior to their

---

[3]    Claimants reserve the right to call or recall anyone identified on Respondent's witness list and, where appropriate, to call witnesses for rebuttal or impeachment purposes.

John H. Wilkinson, Esq.
July 19, 2007
Page 4

testimony. This will reduce unfair surprise and enable the tribunal to regulate the proceedings by preventing Respondent from trying to run out the clock with irrelevant and incompetent testimony.

### Ambush by Purported Expert

In a further apparent ambush tactic, Enmon still has not provided us with the expert discovery that was requested by Claimants and ordered to be produced by the Tribunal in its June 26, 2007 email ruling. Claimants reiterated their request for such documents at the July 12, 2007 pre-hearing conference. At the conference, after representing (falsely) to you that he had in fact produced all workpapers, schedules and calculations of his "expert" Mr. Fuller, Mr. Itkin agreed to determine whether any outstanding expert discovery documents still existed and to produce such documents by July 13, 2007. To date, Mr. Itkin has made no subsequent document production. It is plain that Mr. Itkin's refusal to produce fundamental expert materials is an attempt to "hide the ball" in order to cause confusion and prejudice Claimants at the hearing. It has also unfairly benefited Enmon -- to the detriment of Claimants and the adversarial system -- by preventing us from preparing and submitting a rebuttal report in time for the hearings, as the rebuttal report was due 10 days after the production of the critical materials that Enmon continues to refuse to produce.

While you have suggested that Claimants may probe Enmon's failure to produce these materials in cross examination, in fact, the failure to produce these essential components of Mr. Fuller's purported appraisal cripples our ability to conduct any meaningful cross-examination of him. In particular, Respondent's expert purports to have performed a myriad of calculations in reaching the conclusions in his report, including a discounted cash flow analysis, his "own forecasts" of future revenue and expenses, the determination of a discount rate, the determination of "EV/S, EV/EBITDA, EV/EBIT and EV/Total Assets" multiples, and that application of those multiples to "the most recent financial data available" for Caprock. None of these calculations are contained in the report itself or have been provided to Claimants. Indeed, based on these calculations, Mr. Fuller comes up with a wildly variable damages range. Mr. Itkin has therefore made it impossible to cross examine the so-called expert and to test his methods, assumptions, variables and calculations -- because they are nowhere to be found. This improperly enables Mr. Itkin – and his expert – to try to ambush Claimants at the hearing with whatever damages theory Mr. Fuller decides there to adopt. This tactic violates the most fundamental rules of expert evidence and courts have consistently precluded expert testimony on such grounds.

It is well settled that an expert report must be "detailed and complete...stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." St. Paul Fire and Marine Insurance Co.

John H. Wilkinson, Esq.
July 19, 2007
Page 5

v. Heath Fielding Insurance Broking Ltd., 1999 U.S. Dist. LEXIS 19847, *40 (S.D.N.Y.
Dec. 30, 1995) (quoting Rule 26(a)(2)(B) advisory committee's notes on 1993 amend);
Reed v. Binder 165 F.R.D. 424, 428 (D.N.J. 1996) (the expert report must present the
"'how" and "why" the expert reached the conclusions and opinions to be expressed.");
Salgado ex rel. Salgado v. General Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998)
("Expert reports must not to be sketchy, vague or preliminary in nature.")

   The purpose of these expert report requirements is the "elimination of
unfair surprise to the opposing party and the conservation of resources." Sylla-Sawdon
v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995); Reed, 165 F.R.D. at 429
("The test of a report is whether it was sufficiently complete, detailed and in compliance
with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and
costs are reduced.")  In short, the rule is designed to prevent the very type of ambush
apparently contemplated by Enmon's counsel here, where an expert hides in the reeds
until trial then springs wholly new expert opinions that cannot effectively be cross-
examined.

   Accordingly, we respectfully request that Mr. Fuller's report be stricken in
its entirety and that he be precluded from offering any so-called "expert" testimony at the
hearing.  See Lidge v. Niagara Falls Memorial Medical Center, 17 A.D.3d 1033, 1035
(4th Dep't 2005) ("the court properly precluded testimony from plaintiffs' expert that
exceeded the scope of the expert disclosure inasmuch as defendants established that they
were prejudiced by plaintiffs' failure [to disclose]."); see also Ortiz-Lopez v. Sociedad
Espanola de Auxilio Mutuo y Beneficia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001)
(affirming the district court's ruling that excluded expert testimony on the basis of
deficient disclosures, noting than an expert report must be "'detailed and complete'" in
order to "shorten direct examination and prevent an ambush at trial.") (citation omitted).

**Disorganized and Mismarked Trial Exhibits**

   Additionally, Claimants note that the "Trial Exhibits" presented in
Respondent's pre-arbitration brief which we received last night do not correspond with
those set forth in Respondent's Arbitration Exhibit List.  In order to prevent confusion at
the hearing, which seems to be what Respondent has intended, we respectfully request
that Respondent be required to provide corrected exhibits to its brief immediately.

**Request for Conference**

   In order to resolve all of the forgoing issues in advance of the hearing, we
hereby request a conference at your earliest convenience.

John H. Wilkinson, Esq.
July 19, 2007
Page 6

Respectfully submitted,

Maura Barry Grinalds

cc:     Jason Itkin, Esq. (by email)
        Jennifer Metz (by email)

Attachments

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-18-07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

PROSPECT ENERGY CORP, et al.,

                                    Plaintiff,          :          **ORDER**

        -against-                                       :          07 Civ.117 (LBS)

MICHAEL ENMON,                                          :

                                    Defendant.          :

-----------------------------------------------------------------x

SAND, J.

        Counsel for Respondent and Caprock Pipe & Supply, Inc. has sought this Court's

intervention with respect to its prior order of February 13, 2007 ordering arbitration. It is this

Court's understanding that the Movants have filed an appeal of that order to the Court of Appeals

for the Second circuit. Accordingly, this Court lacks jurisdiction to entertain that motion. Any

such applications should be directed to the Court of Appeals.

SO ORDERED.

Dated:        New York, New York
              July 18, 2007

_____
                                              U.S.D.J.

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PROSPECT ENERGY CORPORATION,
PROSPECT CAPITAL MANAGEMENT          :
LLC, JOHN F. BARRY, M. GRIER
ELIASEK, WALTER PARKER and BART DE:
BIE
                                     :

                    Claimants,
                                     :
                                     :    Case No.:
        - against -                        13 148 02866 06
                                     :

MICHAEL ENMON
                                     :
                    Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>PROCEDURAL ORDER NO. 2</u>

The Tribunal decides and orders as follows:

1. Claimants' entire case in chief will be heard first, followed by Respondent's entire case in chief.

2. Both parties are required to: (i) use good faith efforts to advise of their order of witnesses on three days notice; and (ii) in any event, give at least 24 hours notice of the order of witnesses.

3. Any application by either party to interpose witnesses out of the above order shall be made on at least two day's notice.

4. Only parties to this arbitration proceeding are permitted to be present during the hearing. Corporate parties may be represented by one representative.

5. Respondent is ordered to provide Claimants with a proffer of expected testimony from the following non-party witnesses: Frank Bond, Charles Cunningham, Kari Enmon, Peter Macy, Ronney Becknell, Arvil Berry and Richard Stowell.

6. Respondent is required to provide corrected exhibits to its brief, which conform to the exhibit numbering in Respondent's Arbitration Exhibit List.

7. Any third party documents for third party witnesses that have not yet been produced shall be precluded at the hearing.

8.    The expert report of Mr. David Fuller will not be admitted into evidence and Mr. Fuller
       will be precluded from testifying.

SO ORDERED

Dated: July ___, 2007

                                              _____
                                                          John Wilkinson
                                                          Arbitrator

EXHIBIT 9

**Sussner, Daniel M (NYC)**

| | |
|---|---|
| **From:** | MGRINALD |
| **Sent:** | Wednesday, August 15, 2007 10:37 AM |
| **To:** | Nelson, Timothy G. (NYC); Friedman, Elliot; Meyers, A.J. |
| **Subject:** | FW: Prospect Energy V Enmon |

**From:** Jennifer Metz [mailto:Metzj@adr.org]
**Sent:** Wednesday, August 15, 2007 10:29 AM
**To:** Grinalds, Maura Barry; Jason Itkin; Amber Fraser
**Subject:** Prospect Energy V Enmon

Dear Parties,

Please see the Notice of Hearing below. Thank you.

# AMERICAN ARBITRATION ASSOCIATION
## Notice of Hearing

August 15, 2007

Maura Grinalds
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
29th Floor, Room 424
New York, NY  10036

Jason A. Itkin
Arnold & Itkin LLP
1401 McKinney St Ste 2550
Houston, TX  77010

Re: 13 148 02866 06
    Prospect Energy Corporation / Bart  De Bie / John
     Barry / M. Eliasek / Walter Parker / Prospect Cap
    ital Management LLC
    and
    Michael Enmon

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Place:   Skadden Arps Slate Meagher & Flom LLP
        Four Times Square
        New York, NY 10036

Date:   September 27, 2007
Time:   10:00 AM

Date:   September 28, 2007
Time:   10:00 AM

Date:   September 29, 2007
Time:   10:00 AM
Before: John H. Wilkinson

Please attend promptly with your witnesses and be prepared to present your proofs.

Jennifer Metz
Case Manager
401 431 4795

NOTICE:  The arbitrator has arranged his schedule and reserved the above dates.  Therefore, every effort should be made to appear on the dates scheduled.  In the event that unforeseen circumstances make it impossible to attend the hearing as scheduled, a party requesting a postponement should obtain the agreement of the other party.  If there is no mutual agreement, the arbitrator will make a determination.  All requests for postponements must be communicated to the Case Manager, not the arbitrator.  There should be no direct communication between the parties and the neutral arbitrator.  In some instances, postponements are subject to cancellation fees by the arbitrator.  Any party wishing a stenographic record must make arrangements directly with the stenographer and notify the other party of the arrangements in advance of the hearings.

cc:     John H. Wilkinson, Esq.

Jennifer Metz

American Arbitration Association
Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914
Toll free tel. 866-293-4053
Direct line 401-431-4795
Fax 401-435-6529
metzj@adr.org
www.adr.org

This e-mail communication is confidential and is intended only for theindividuals or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning (866) 293-4053 during the hours of 8:30 A.M. - 5:30 P.M. (eastern time). Please then delete the e-mail and any copies of it. Thank you.

EXHIBIT 10

**Sussner, Daniel M (NYC)**

| | |
|---|---|
| **From:** | karnold@arnolditkin.com |
| **Sent:** | Monday, October 08, 2007 5:01 PM |
| **To:** | John Wilkinson; Friedman, Elliot; Jason Itkin |
| **Cc:** | Grinalds, Maura Barry (NYC); Nelson, Timothy G. (NYC); Kristina McDonald; Susan Serry |
| **Subject:** | RE: Prospect v. Enmon |

I checked with David Fuller and he can testify on November 14th.  Those dates are fine with us.

# Kurt B. Arnold
# Arnold & Itkin LLP
# 5 Houston Center
# 1401 McKinney Street
# Suite 2550
# Houston, TX 77010
# 713.222.3800
# 713.222.3850 (fax)
# karnold@arnolditkin.com

---

**From:** John Wilkinson [mailto:johnhwilkinson@msn.com]
**Sent:** Monday, October 08, 2007 3:41 PM
**To:** Friedman, Elliot; Jason Itkin; Kurt Arnold
**Cc:** Grinalds, Maura Barry; Nelson, Timothy G.; Kristina McDonald
**Subject:** Re: Prospect v. Enmon

Could we do Nov. 14 and, if Respondent designates an expert, the 15th? If so, would one of you please check to see if the AAA has space on those days? Thanks and regards.

John Wilkinson

----- Original Message -----
**From:** Kurt Arnold
**To:** Friedman, Elliot ; Jason Itkin
**Cc:** Grinalds, Maura Barry ; Nelson, Timothy G. ; John Wilkinson ; Kristina McDonald
**Sent:** Monday, October 08, 2007 12:43 PM
**Subject:** RE: Prospect v. Enmon

Mr. Wilkinson,

We have a railroad crossing case that will pretty much occupy the firm's resources through the end of October.  It is set for October 15

although we have heard some grumblings that it might get pushed back one week. Hopefully, we will know something more today.

As a result, our preference is to set aside one or two days (depending on Defendant's decision concerning an expert) during the weeks of November 12 or November 19.  Those weeks are fairly wide open for us and we can accommodate any two consecutive days during those two weeks.  I discussed these dates with Ms. Grinalds but of course I do not know your schedule.

Thank you for the consideration.


**Kurt B. Arnold**
**Arnold & Itkin LLP**
**5 Houston Center**
**1401 McKinney Street**
**Suite 2550**
**Houston, TX 77010**
**713.222.3800**
**713.222.3850 (fax)**
**karnold@arnolditkin.com**

---

**From:** Friedman, Elliot [mailto:ELFRIEDM@skadden.com]
**Sent:** Friday, October 05, 2007 5:20 PM
**To:** Kurt Arnold; Jason Itkin
**Cc:** Grinalds, Maura Barry; Nelson, Timothy G.; John Wilkinson
**Subject:** RE: Prospect v. Enmon

Kurt, Jason,

It does not appear that you were copied on Mr. Wilkinson's email below.

Regards,

Elliot

---

**From:** John Wilkinson [mailto:johnhwilkinson@msn.com]
**Sent:** Friday, October 05, 2007 6:10 PM
**To:** Friedman, Elliot
**Cc:** Grinalds, Maura Barry; Nelson, Timothy G.

**Subject:** Re: Prospect v. Enmon

Dear Parties:

    Claimant's application to bifurcate is denied for the following reasons: 1. The motion is made very late in the proceedings. 2. There are, at most, two hearing days left to bifurcate. This means that the costs which might potentially be saved by bifurcation are, at best, limited. This is particularly so since Respondent has already incurred most of the costs of his damages expert. 3. Bifurcation at this point could result in extending the proceeding in a manner contrary to the primary purpose of arbitration which is to reach a fair result in the most cost effective way possible.

    Do you think we need to schedule one or two hearing days? I could do October 22, 24, 25 or 29. I hope one or two of those works. Regards.

John Wilkinson


----- Original Message -----
**From:** Friedman, Elliot
**To:** johnhwilkinson@msn.com
**Cc:** Grinalds, Maura Barry ; Nelson, Timothy G.
**Sent:** Thursday, October 04, 2007 6:15 PM
**Subject:** Prospect v. Enmon

Mr. Wilkinson,

Please see the attached letter, which was also faxed to you.

Best regards,

Elliot Friedman

**Elliot Friedman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522
T: 212.735.3726 | F: 917.777.3726
elliot.friedman@skadden.com


--------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, u

*****************************************************
This email and any attachments thereto, is intended only for use by the addressee

Further information about the firm, a list of the Partners and their professiona
*****************************************************
========================================================================
--------------------------------------------------------------------------
*****************************************************
This email and any attachments thereto, is intended only for use by the addressee

Further information about the firm, a list of the Partners and their professional
*****************************************************
========================================================================

EXHIBIT 11



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

February 20, 2007

VIA FACSIMILE
Maura Grinalds
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
29th Floor, Room 424
New York, NY  10036

Jason A. Itkin
Arnold & Itkin LLP
1401 McKinney St Ste 2550
Houston, TX  77010

Re: 13 148 02866 06
    Prospect Energy Corporation / Bart  De Bie / John
    Barry / M. Eliasek / Walter Parker / Prospect Cap
    ital Management LLC
    and
    Michael Enmon

Dear Parties:

This will confirm a preliminary hearing in the above matter was held on February 15, 2007.  Enclosed please find the scheduling order established during the preliminary hearing.

The parties should directly submit to the arbitrator any correspondence, motions, briefs, etc., that require the arbitrator's attention. Always send a copy to all other parties in the same manner, allowing all recipients to receive the communication at the same time.  The Association only requires a copy of the parties' cover letter for its file.  The arbitrator may communicate in writing with the parties and send a copy of the communication to the Association as well.  There shall be no direct oral communication between the parties and the arbitrator, except at the hearings.

The arbitrator's direct mailing address and fax number is:

John H. Wilkinson, Esq.
Of Counsel
c/o John H. Wilkinson
Fulton, Rowe, Hart & Coon
One Rockefeller Plaza, Suite 301
New York, NY 10020-2002
Fax # 212-245-1863

As a reminder, the Accelerated Exchange program specifications are as follows:

- All parties to the dispute and the arbitrator must agree to use accelerated exchange.
- Cases being conducted *ex-parte* are <u>not</u> subject to accelerated exchange.

- Accelerated Exchange provides for the direct transmittal of letters, documents, and briefs between the parties and the arbitrator. A copy must be transmitted simultaneously to opposing parties with AAA copied with a cover letter.

The Accelerated Exchange Program does not provide for:

- *Ex-parte* communications of any kind, via mail, telephone, or any other form of electronic communication.
- Discussion between the parties and the arbitrators regarding compensation, fees, and expenses.
- Discussion concerning arbitrator disclosures and/or challenges, locale disputes, or settlement negotiations.

Each party has been billed $3900.00 as a deposit to cover the arbitrator's anticipated compensation and expenses for this matter. This amount was determined by the arbitrator and based on the overall case schedule that the parties arrived at during the Preliminary Hearing. As we discussed at the conclusion of the Preliminary Hearing, payment is to be received by the Association no later than June 23, 2007, which is thirty days prior to the first evidentiary hearing. You will be receiving an automatically generated invoice within two weeks and every thirty days thereafter, until the balance is paid. Should you need a copy immediately to facilitate payment please let me know. This will also confirm our discussion that we will be informing the arbitrator of the amount on deposit as of the due date, and if full deposits are not on hand the arbitrator may suspend this proceeding pending the parties' compliance with the rules.

Additionally, each party's invoice will reflect any applicable administrative fees due the Association.

You may also view case financial information, as well as make payments with a credit card online via AAA's WebFile.

If you have any questions, please do not hesitate to call.

Sincerely,

Robert A. Zanni
Case Manager
401 431 4707
ZanniR@adr.org

*Supervisor Information: Tracey Trudel, 401 431 4701, TrudelT@adr.org*

Encl.

cc:    John H. Wilkinson, Esq.

13 148 02866 06
**Prospect Energy Corporation, et al.**
**vs.**
**Michael Enmon**

Set forth below are the schedule and ground rules emerging from the February 15, 2007 pre-hearing conference in the above-captioned arbitration:

| | |
|---|---|
| Feb. 19, 2007 | Respondent to serve counterclaim.[1] |
| Feb. 23 | Claimants to serve response to counterclaim. |
| March 7 | Parties to serve document requests. |
| March 14 | Parties to serve objections, if any, to document requests. |
| March 26 | Following negotiation of objections to document requests, the parties are to furnish to the arbitrator and serve on each other letters describing and briefly setting forth positions concerning unresolved objections to document requests. Any such objections will be resolved on the basis of the letters, or a conference call will be initiated for that purpose. |
| April 6 | Parties to complete production of documents responsive to requests as to which there was no objection. |
| 2 Weeks After Rulings On Objections | Parties to complete production of documents responsive to requests as to which objections were overruled. |
| May 31 | Parties to serve reports of any experts whom they expect to call at the hearings in support of their affirmative cases. Such reports will be sufficiently detailed to permit adequate preparation for cross examination. |
| June 29 | Parties to serve rebuttal reports of any experts whom they expect to call at the hearings. Such reports will be sufficiently detailed to permit adequate preparation for cross examination. |
| July 11 | Parties to exchange exhibit lists and witness lists. While the exhibit lists are to include documents anticipated for use on cross examination or rebuttal, the parties will be given some latitude to use previously unlisted documents |

---

[1] In every instance when one side is to furnish something to the other side pursuant to this schedule, it is to be done pursuant to overnight mail or fax for arrival on the date indicated herein.

1

on cross or rebuttal where fairness so dictates.

July 12       There will be a conference call between the parties and the arbitrator to discuss any issues the parties might wish to raise. The American Arbitration Association will arrange for the call, which will start at 2:30 p.m., eastern time.

July 18       Parties to serve pre-hearing memoranda. Whether there will be page limits on these memoranda and, if so, what those limits will be will be addressed shortly before the hearing.

### ADDITIONAL MATTERS COVERED
### AT THE PREHEARING CONFERENCE

1. Hearings will take place at the American Arbitration Association, 1633 Broadway, 10th Floor, N.Y., N.Y. on July 23, 24, 25, 26 and 27, 2007, commencing each day at 10 a.m. These hearing dates are firmly set and will not be adjourned except upon a clear and convincing showing of good cause.

2. Each side will make best efforts to provide three days' notice and must provide one day's notice of witnesses it will call on a given day, together with the order in which such witnesses will be called and an estimate of the length of the direct of each such witness.

3. The parties will arrange exhibits in tabbed binders for purposes of easy access at the hearings. A set of the binders will be available at the hearings for each witness, the arbitrator and the other side.

4. The parties expressed a wish to participate in the Accelerated Exchange Program of the American Arbitration Association.

5. The parties agreed that the award would contain the reasons for the result reached.

6. The parties agreed to share the cost of a court reporter at the hearings.

End of Memorandum

July 15, 2007

2

EXHIBIT 12

# ARNOLD & ITKIN LLP

A REGISTERED LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
5 HOUSTON CENTER
1401 MCKINNEY STREET, STE. 2550
HOUSTON, TEXAS 77010
(713) 222-3800
(713) 222-3850(FAX)
www.arnolditkin.com

June 21, 2007

*Via CMRRR#: 7006-2760 0003 6228 9244
and Facsimile (212) 245-1863 and E-mail*
Mr. John H. Wilkinson, Esq.
Of Counsel
c/o John H. Wilkinson
**Fulton, Rowe, Hart & Coon**
One Rockefeller Plaza, Suite 301
New York, NY 100020-2002

  Re: Cause No. 002-Q5B-VMY, *Prospect Energy Corporation, et al, v. Michael Enmon*, American Arbitration Association Claim.

Dear Mr. Wilkinson:

  We write this letter in response to Claimants' correspondence to you earlier today regarding certain discovery matters. In that letter, Claimants reference various communications between the parties (via letter and e-mail) since the discovery process began. However, Claimants failed to include the fact that Respondent has been attempting to set up a call to discuss these matters in person rather than exchange letters. If Claimants had taken Respondent up on his offer, they would have learned that:

  Respondent has either produced or logged every document in his possession, custody, or control that is responsive to categories 1-6 in Claimants' proposed "Decision on Application." Respondent has scoured his files and taken an exhaustive, good faith effort to provide all documents relevant to these categories and log the documents protected by an applicable privilege. Simply put, every document that has been identified has been given to Claimants or logged.

  Second, Respondent has produced nearly all documents responsive to categories 7-11. All the financial data regarding Caprock and Respondent's efforts to fund the transaction at issue have been produced. To be clear, the documents that David Fuller relied upon to form his opinion have been produced. Respondent and Fuller are working to produce any remaining documents, such as work papers, engagement letters, and any communications between Fuller and Respondent. Those documents will be produced by Tuesday, June 26, 2007.

Third, Respondent has no problem allowing Claimants an extra ten days following receipt of such documents to file their expert reports.

Fourth, it is important to note that Respondent has been more than willing to work with Claimants without your intervention. Each time Claimants have expressed a concern about discovery, Respondent has taken a serious look at the perceived deficiencies. In fact, Respondent has provided an additional privilege log and supplemented its discovery.

To be clear, Claimants have also had to supplement their discovery responses. Indeed, Claimants still have serious deficiencies in their discovery responses that must be rectified. Respondent hoped to do this amicably in person. To date, Claimants have chosen not to take Respondent up on his offer to do so. As a result, Respondent is still waiting to receive proposed dates to depose many of the key witnesses in the case.

The discovery process should be simple. Both sides should work together to ensure that documents are produced and depositions are scheduled at mutually agreeable times. Respondents are still more than willing to work with Claimants to ensure that discovery is conducted and all non-privileged documents are exchanged in a proper manner. There is no intent to "hide the ball" or "run out the clock." Respondent sincerely desires to put the egregious facts of this case on the table and hopes to receive deposition dates and additional documents in the near future.

Hopefully, the parties can sort out their discovery issues without your intervention. But if a call is necessary, Respondent is ready and willing to participate.

Sincerely,

Jason A. Itkin

JAI/ec

cc:

*Via Facsimile: 917.777.2550 and E-mail*
Ms. Maura Barry Grinalds
Mr. Jonathan J. Lerner
**Skadden Arps Slate Meagher & Flom**
Four Times Square
New York, NY 10036

*Via Facsimile: 401.435.6529 and E-mail*
Ms. Jennifer Metz
Case Manager
**American Arbitration Association**
Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914

# EXHIBIT 13

## Auer, Allison (NYC)

| | |
|---|---|
| **From:** | Grinalds, Maura Barry |
| **Sent:** | Saturday, June 23, 2007 5:09 PM |
| **To:** | 'Jason Itkin'; Friedman, Elliot |
| **Cc:** | Caj Boatright; Susan Serry; Nelson, Timothy G. |
| **Subject:** | RE: Prospect v. Enmon |

Jason,

In your letter to Mr. Wilkinson you make the vague allegation that there are "serious deficiencies" in our client's production, but, as you know, you have never once before raised any alleged deficiencies with us -- even though we completed our production months ago (excluding a supplemental production of third party Vinson & Elkins documents which we produced nearly a month ago). If you have identified any actual deficiencies -- which would surprise us given the extreme thoroughness of our collection and production which ultimately comprised many boxes of documents -- please provide a specific description of them so that we can efficiently respond. While we are not at all averse to having a conference call, we believe that a written record will be helpful in understanding exactly what you contend are "deficiencies" (which you have never identified to us) and to avoid miscommunications. Once we receive your list, we will schedule a call with you during which we can discuss our respective document issues.

Your letter also states your desire to depose the witnesses in this case, a desire noted for the first time in your email dated June 19, 2007.  However, during the pre-hearing conference, you never requested, much less obtained, the right to take depositions (which would have been inappropriate in this arbitration in any event). Accordingly, the February 20, 2007 Procedural Order entered by Mr. Wilkinson makes no provision for depositions. Moreover, any attempt to conduct depositions at this extremely late stage in this proceeding would seriously disrupt our preparations for the hearings which are set to begin on July 23, 2007, pursuant to the February 20 Procedural Order, which is "set in stone." Given the last-minute nature of this request -- which appears to have been raised as an afterthought in anticipation of our application to Mr. Wilkinson for an order compelling your production of outstanding documents -- as well as the tremendous, unnecessary expense already incurred by the Prospect parties in defending this action across two states and four fora, the Prospect parties cannot accede to your belated request for depositions.

Finally, we note your undertaking to provide expert disclosure by June 26, 2007 and consent to our filing of our rebuttal ten days following receipt of such all of the requested expert disclosure. We look forward to receiving all of the outstanding materials by June 26. To the extent that Mr. Fuller reviewed or relied upon documents in the parties' productions, please be sure to include a specific list with Bates numbers of these documents.

Thank you,

Maura

---

**From:** Jason Itkin [mailto:jitkin@arnolditkin.com]
**Sent:** Wednesday, June 20, 2007 10:21 AM

**To:** Friedman, Elliot; Grinalds, Maura Barry
**Cc:** Caj Boatright; Susan Serry; Nelson, Timothy G.
**Subject:** FW: Prospect v. Enmon

My Friday just got taken up.

Can y'all talk Monday about docs and depos?  I am free at 10 am and from 1-4. Y'all can pick the time.  Hopefully, we can work all this out without bothering the arbitrator.

Jason Itkin
Arnold & Itkin LLP
1401 McKinney Street
Suite 2550
Houston, TX 77010
Main: 713.222.3800
Fax: 713.222.3850
www.arnolditkin.com

---

**From:** Jason Itkin
**Sent:** Tuesday, June 19, 2007 10:18 AM
**To:** Friedman, Elliot; Caj Boatright; Susan Serry
**Cc:** Grinalds, Maura Barry; Nelson, Timothy G.
**Subject:** RE: Prospect v. Enmon

I guess you always have the right to call the arbitrator.  . . .

I suggest a call this week, because we have lots of problems with your production as well.

Plus, I need depo dates for Barry, DeBie, Eliasek, and a corp rep on the search for documents.

Are you free Friday afternoon?

Jason Itkin
Arnold & Itkin LLP
1401 McKinney Street

Suite 2550
Houston, TX 77010
Main: 713.222.3800
Fax: 713.222.3850
www.arnolditkin.com

---

**From:** Friedman, Elliot [mailto:ELFRIEDM@skadden.com]
**Sent:** Tuesday, June 19, 2007 9:53 AM
**To:** Jason Itkin; Caj Boatright
**Cc:** Grinalds, Maura Barry; Nelson, Timothy G.
**Subject:** Prospect v. Enmon

Mr. Itkin,

We have not received a response to our letter of last Friday, June 15, identifying a series of deficiencies in Respondent's document production and requesting a substantive response by close of business yesterday, June 18. If we still have not received a response from you by tomorrow afternoon identifying definitively what documents you will produce (and when), we reserve the right to make immediate application to the arbitrator on this issue.

Elliot Friedman

Elliot Friedman
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
Direct Dial: (212) 735-3726
Fax: (917) 777-3726

------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unles

**************************************************
This email and any attachments thereto, is intended only for use by the addressee(s)

Further information about the firm, a list of the Partners and their professional qu
**************************************************
==============================================================================

EXHIBIT 14

**Meyers, A.J.**

| | |
|---|---|
| **From:** | John Wilkinson [johnhwilkinson@msn.com] |
| **Sent:** | Tuesday, June 26, 2007 9:12 AM |
| **To:** | Grinalds, Maura Barry; jitkin@arnolditkin.com |
| **Cc:** | metzj@adr.org |
| **Subject:** | Prospect Energy / Enmon |

Dear Parties:

Set forth below are rulings on matters raised in recent correspondence:

1. I accept the representation of Respondent's counsel that they have made a complete and comprehensive effort to locate documents responsive to categories 1-6 of Claimants' proposed "Decision on Application" and that Respondent has produced or logged all such documents. However, the accuracy of that representation may be explored by Claimants' counsel at the hearing on the merits, and if it should unexpectedly turn out that the representation is inaccurate in material respects, that will be a compelling factor to be taken into account at the time of the Final Award.

2. On or before July 6, 2007, Respondent is to furnish a complete privilege log, as requested by Claimants.

3. On or before July 6, 2007, Respondent is to produce and specifically identify all documents requested by Claimants in connection with Respondent's expert, Mr. Fuller. It is not sufficient for Respondent to represent that such documents have been produced. All such documents must be specifically identified as documents pertaining to the testimony of Mr. Fuller. Claimants' time to serve any rebuttal expert report is extended to 10 days after Respondent's compliance with this paragraph.

4. If there should unexpectedly be a material failure to comply with any aspect of paragraphs 2 and 3 above, I do not want to hear about that now but, rather, any such shortcomings may be aired at the hearing on the merits and will be strongly addressed at the time of the Final Award.

5. There will be no depositions in this arbitration.

6. As previously stated on a number of occasions, the hearing dates in this arbitration have been firmly set for months and will not be adjourned except upon a clear and compelling showing of good cause unrelated to lack of preparedness.

John Wilkinson

Arbitrator

EXHIBIT 15

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

June 23, 2007

John H. Wilkinson, Esq.
Fulton, Rowe, Hart & Coon
One Rockefeller Plaza, Suite 301
New York, NY 10020-2002

RE:    Prospect Energy Corp. et al & Michael Enmon
       (AAA Arbitration 13 148 02866 06)

Dear Mr. Wilkinson:

We are in receipt of Mr. Enmon's purported response to our letter of June 21, 2007. As a threshold matter, Mr. Enmon's professed desire to "sort out . . . discovery issues without your intervention" is belied by the record. The fact is that we only received a purported response to the substance of our discovery concerns after we wrote you to seek assistance -- as the long trail of previously-unanswered correspondence attests.

In all events, Mr. Enmon's vague and evasive response does not actually address our concerns regarding the deficiencies in his discovery:

1.    Expert materials: We note that Mr. Enmon does not dispute that he has failed to produce any of the required expert materials, but commits to produce all outstanding documents called for by paragraphs 7 through 11 of our proposed Decision on Application, including all documents relied upon or considered by his "expert," Mr. Fuller, no later than June 26, and consents to a further 10-day extension of time after our receipt of such materials for our rebuttal expert report to remedy his prior failure to produce such documents. However, Mr. Enmon's vague claim that has already "produced" some of these materials is unsatisfactory. Even if some of the documents reviewed by Mr. Fuller are located in Mr. Enmon's existing production, we have no means of actually identifying those

Mr. John H. Wilkinson, Esq.
June 21, 2007
Page 2

documents.  Unless Mr. Enmon intends to reproduce to us all of the documents in the productions reviewed by Mr. Fuller, we request that Mr. Enmon be ordered to identify with particularity and by Bates range exactly which documents in the parties' productions were considered or relied upon by Mr. Fuller in drafting his expert report.

2.    <u>Privilege Log</u>:  Mr. Enmon fails to address the relief requested in paragraph 1 of our proposed "Decision on Application," namely, an order remedying his failure to produce a privilege log adequately describing the grounds for his claims of privilege and the author of each document over which a claim of privilege is made.  (<u>See</u> Claimants' May 11, 2007 ltr. (objecting to Mr. Enmon's failure to "indicate the nature and content of any of the communications being redacted," to indicate the author of "handwritten notes" or to state the reasons for redacting numerous documents in his supplementary production).)  We respectfully request an order in the form of paragraph 1 of our proposed Decision on Application mandating that Mr. Enmon produce a proper privilege log.

3.    <u>Other Document Deficiencies</u>:  Mr. Enmon now unequivocally represents that he has produced "every" non-privileged document identified in paragraphs 1 through 6 of our proposed order.  In light of the serious gaps in Enmon's production and the paucity of the material Mr. Enmon has actually turned over, the inescapable conclusion is that certain records (<u>e.g.</u>, documents pertaining to the Caprock transaction, or records relating to Mr. Enmon's purported change of residence from New Mexico to Texas) have been discarded or destroyed.  We will attempt to confer again with Enmon's counsel to address these inexplicable gaps.  We reserve the right to renew our application for an order compelling discovery and/or to seek appropriate adverse evidentiary inferences at the hearing based on Mr. Enmon's failure to produce such documents.

The other points made in Mr. Enmon's letter deserve only short shrift:

- <u>New Assertion of Alleged Deficiencies in Prospect's Production</u>:  While Mr. Enmon now makes a vague, generalized assertion of purported "deficiencies" in Claimants' document production, it bears emphasis that <u>he has never previously identified a single specific problem with Claimants' document discovery</u>.  Tellingly, despite the completion of our production long ago, Mr. Enmon's counsel never even hinted at any such "deficiencies" until this week, after receiving our email reminding him of the outstanding deficiencies in his production and foreshadowing our present application.  Even now, Enmon's counsel has <u>still not identified</u>

Mr. John H. Wilkinson, Esq.
June 21, 2007
Page 3

any specific deficiencies in Claimants' document production. After receiving Respondent's letter to you, we advised Respondent's counsel that we are prepared to confer to address any deficiencies (if they exist, which we doubt) and have asked that they be identified with specificity. We await Respondent's reply.

- Belated Request for Depositions: Likewise, Mr. Enmon's request for "dates to depose . . . witnesses" was also made for the first time this week in his Tuesday, June 19, 2007 email to us, as an apparent reflexive response to our email of earlier that day. Mr. Enmon's last-minute request is both untimely and improper. On February 15, 2007, you conducted a preliminary hearing addressing the appropriate scope and nature of pre-trial discovery in this proceeding. At no point during that conference did Mr. Enmon's counsel request, much less obtain, the right to take depositions. Reflecting that position, your February 20, 2007 Procedural Order makes no provision for depositions (which, in all events, are rarely if ever ordered in arbitration proceedings of this kind). We respectfully submit that Mr. Enmon may not unilaterally override that Order merely based on his counsel's afterthought. Indeed, any attempt to impose depositions at this late stage in this proceeding would irreparably disrupt the parties' preparations for the hearings commencing on July 23, 2007, pursuant to the carefully-crafted timetable set forth months ago in the February 20 Procedural Order. Mr. Enmon's belated request for depositions should therefore be rejected.

Accordingly, we request that relief be granted as set forth in paragraphs 1 and 2 above.

Respectfully submitted,

Maura Barry Grinalds

cc:    Jason Itkin (by email)
       Jennifer Metz (by email)